Ruggles, Exr., v. Randall et al.

HENRY RUGGLES, EXECUTOR, vs. EDWARD E. RANDALL
ET AL.

Second Judicial District, Norwich, October Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A Connecticut testator gave a pecuniary legacy to " the heirs" of a de-
ceased niece. *Held* that the legacy vested as a class gift, *per stirpes*,
in those persons who constituted her heirs at the time of the
testator's death, without regard to whether they answered that de-
scription at the time of her decease.

The word "heirs," when used in a will, primarily signifies those enti-
tled by law to inherit by descent the real estate of a deceased person;
and a resort to secondary meanings of the word will ordinarily be
had, only when adherence to the primary meaning would make the
provision under consideration ineffectual or plainly unreasonable.

In this State the widow is not an "heir" of her deceased husband,
within the primary signification of that word.

The testator gave his niece *K* "and her husband" $500, and provided
that if he, the testator, survived them (which was not the case),
"said sum so intended for her" should become part of the residue
of his estate. *Held* that *K* and her husband each took $250.

A provision for the heirs of certain nieces gives nothing to the surviving
husbands of such nieces.

After giving $400 each to *A*, *B* and *C*, the will provided that if the tes-
tator survived either or all of them, then said $400 should be paid
" to their or each of their heirs." *Held* that this meant that the
legacy to each was to be divided among the heirs of each, not that
each of such heirs was to get $400.

The residuary clause of the will authorized the executor to convert the
whole estate into money and pay the " legatees named," and if there
was not enough to pay them in full, then to make a proportional
deduction from each "legacy named;" and directed that if there
was a surplus it should go to "all the legatees named in this will,
to be equally divided among them all, all to share and share alike
and in equal amounts of the same." *Held:—*

1. That all those who were to receive bequests were equally "named,"
whether described by their individual names, or as members of a
class, like "heirs" or "children," or as occupying a certain rela-
tion to another, such as a "husband."

2. That the surplus was not to be divided *per capita* among all those
who might take as legatees, but among the classes of legatees, each
class, however numerous, being treated as a unit for this purpose.

[Argued October 19th—decided November 30th, 1897.]

SUIT to determine the validity and construction of the will of Thomas J. Ridgway of Norwich, deceased, brought to the Superior Court in New London County and reserved by that court, *Shumway, J.,* upon the allegations of the complaint and answers, for the consideration and advice of this court.

The material portions of the will were as follows : —

" Item 1. I give and bequeath to the children of my late niece Catherine Randall, now deceased, who was the wife of John P. Randall of Pittston, Pennsylvania, the sum of Eight Hundred Dollars ($800) to be equally divided between them to share and share alike, to them and their heirs forever.

" Item 2. I give and bequeath to my niece Antoinette King (widow) of Stanhope, New Jersey, the sum of Eight Hundred Dollars ($800) and in case she dies before me the said sum of Eight Hundred Dollars I give and bequeath to her heirs to be divided equally among them.

" Item 3. I give and bequeath to my niece Amanda Jewett of Apalachine, State of New York and [in] case of her death before me to her heirs forever, the sum of Five Hundred Dollars ($500). . . .

" Item 8. I give and bequeath to the heirs of my niece, Minerva Ennis of Hoboken, New Jersey, the sum of Five Hundred Dollars (500).

" Item 9. I give and bequeath to my niece, Martha Kimball and her husband of Lackawaxen, Pennsylvania, the sum of Five Hundred Dollars, (500) but in case I survive them said sum so intended for her shall become and remain a part of my residuary estate to be disposed of as hereinafter directed. . . .

" Item 14. I give and bequeath to the heirs of Mary Gibbs, deceased, of Danville, Pennsylvania, the sum of Five Hundred Dollars (500). . . .

" Item 19. I give and bequeath to Mrs. Amanda Rockwell of Milford, Pennsylvania, to Mrs. Minerva Hazen of Rowland, Pennsylvania, and to Louis P. Hazen of Chicago, Ill., the sum of Four Hundred Dollars ($400) each. In case I shall survive either or all of the persons last named then the said sum of four hundred dollars so intended to be given to

said deceased shall be paid to their or each of their heirs and I give and bequeath the same to them forever.  . . .

" Lastly. I do hereby fully authorize and empower my executor hereinafter named to convert all my real and personal estate which I may die possessed of (except such as I shall reserve to be distributed without inventory) into money, by sale or otherwise as he shall judge to be for the best interest of all the legatees named in this my last will and testament, and to pay the legatees named in this will their respective sums as soon as the same can be done and comply with the laws of this State governing the settlement of estates of deceased persons, and if after the sale of my property as above directed and after the payment of my debts and funeral expenses, it shall be found that my estate will not pay the legacies in full, in that case a proportional deduction is by me directed to be made by my executor from each legacy named in this will and each legacy to be paid according to such deduction and in case there shall be a surplus of my estate more than sufficient to pay the several legacies herein named said surplus shall become a part of my residuary estate.   All of said surplus and all the rest and residue of my estate I give bequeath and devise to all the legatees named in this will to be equally divided among them all, all to share and share alike and in equal amounts of the same."

The will was executed July 19th, 1894, and the testator died in 1896, leaving no widow or descendants.

Minerva Ennis had died in 1891, leaving several children, one of whom, David R. Ennis, died in 1895.   Her husband is still living.   David R. Ennis left a widow and two married daughters.

Martha Kimball and her husband both survived the testator.   She died before this suit was instituted, and he is insane.

Amanda Jewett had died in January, 1894, leaving descendants and a husband.

Mary Gibbs had died unmarried, leaving brothers and a sister and children and grandchildren of a deceased brother.

Amanda Rockwell had died in 1893, leaving children.

The questions as to which the advice of the court was asked, were as follows:—

1. To whom and in what shares, shall be paid David R. Ennis' part of the legacy given in Item 8 to the heirs of Minerva Ennis? 2. To whom is payable the legacy given in Item 9? 3. Have the respective surviving husbands of Amanda Jewett, the legatee named in Item 3, and of Minerva Ennis, mentioned in Item 8, any interest in the legacies given in those items, respectively, and if so, what interest? 4. Regarding the legacy given in Item 14 to the heirs of Mary Gibbs, what disposition is to be made of the share in said legacy of William J. Gibbs, who was an heir of Mary Gibbs at her death, but died before testator? 5. Owing to the fact that the testator survived Amanda Rockwell, but died before Louis P. Hazen and Minerva Hazen, the legatees named in Item 19, what disposition shall be made of the $400 intended to be given to said Amanda? 6. Whereas the testator in the last section of said will provides as follows: "All of said surplus and all the rest and residue of my estate I give, bequeath, and devise to all the legatees named in this will to be equally divided among them all, all to share and share alike and in equal amounts of the same;" and whereas many of the legatees named in said will died before the testator, and the legacies which they would have taken if alive are by said will given in case of their death to their heirs who are not named, and whereas in items 1, 8 and 14, no legatee whatever is mentioned by name; what disposition shall be made of said residuum?

*Wallace S. Allis,* for Edward E. Randall et al.

*Gardiner Greene* and *Arthur B. Calkins,* for Eliza E. Griswold et al.

*Amos A. Browning,* for Henry B. King et al.

BALDWIN, J. The legacy to the heirs of the testator's deceased niece, Minerva Ennis, was a class gift which vested

upon his decease in her descendants who were then living, *per stirpes*. The will, like every other, is to be read as if executed at the moment of the testator's death. Whoever were, at that time, her heirs, in the sense in which he employed that word, are to take, without regard to whether they did or did not answer that description at her decease. *Gold* v. *Judson*, 21 Conn. 616, 623.

The word "heirs," in its strict and primary meaning, signifies those entitled by law to inherit by descent the real estate of a deceased person. It is also popularly used to denote those entitled by the statute of distributions to succeed beneficially to the personal estate of a deceased person. The will now before us, while purporting to dispose of both real and personal estate, contemplated a conversion of the whole into money; and the provision for the heirs of Mrs. Ennis, even assuming that under the residuary clause they are to share in the proceeds of real estate, should therefore be treated as a bequest of personalty.

As a general rule its primary legal meaning should be given to every word in a will, unless the context, when read in the light of the circumstances surrounding the testator, shows clearly that it was used in a different sense. *Leake* v. *Watson*, 60 Conn. 498, 506, 508. The fact that the word now in question occurs in a disposition of personal estate is to be given due weight; but it is not conclusive. *Mullen* v. *Reed*, 64 Conn. 240, 248. Resort will ordinarily be had to secondary meanings, in cases of testamentary construction, only when adherence to the primary meaning would make the provision under consideration ineffectual or plainly unreasonable. No such result follows from assigning to the term "heirs of my niece, Minerva Ennis," its proper legal signification. On the contrary, it is highly improbable that the testator would prefer to her lineal descendants those who might be the statutory successors to her personal estate under the laws of New Jersey, with which it is not to be presumed that he was acquainted. It is also worth remark that in "Item 2" his contingent bequest to the heirs of another niece living in the same State, was to be equally divided between them; a fixed

rule being thus imposed, without regard to any statutory mode of distribution. The word "heirs," therefore, is to be taken in its primary meaning, under the laws of Connecticut, this being the State where the testator had his domicil, and executed his will. It follows that the children of David R. Ennis together take one fourth of the legacy in question, and that his widow takes nothing. *Morris* v. *Bolles*, 65 Conn. 45, 58.

Martha Kimball and her husband were each entitled to $250, under "Item 9" of the will. The reference to "said sum so intended for her," cannot avail either to double her legacy, or to deprive her insane husband of that which had been expressly given to him. While he, no doubt, was thus remembered only because of his marriage to her, the testator intended to benefit her by benefiting him.

The provision for the heirs of Minerva Ennis and Amanda Jewett, each of whom had died leaving descendants who survived the testator, enured solely to the benefit of such descendants, and the husbands of these nieces took nothing.

For the reasons already stated in discussing the legacy to the heirs of Minerva Ennis, the "heirs of Mary Gibbs, deceased," were her brothers and sister and those of the descendants of her deceased brothers who were living when the testator died; sharing *per stirpes*. What would have fallen to William J. Gibbs, had he survived the testator, is to be divided into six parts, of which each of his children takes one, and that remaining goes to the children of his deceased son. *Cook* v. *Catlin*, 25 Conn. 387.

The death of Amanda Rockwell before the testator, brought into operation the clause of the will intended to be for the benefit of her heirs. While inartificially expressed, it is sufficient to send the legacy to them, and insufficient to multiply it by their number. Each takes an equal share in $400.

The residuary clause empowers the executor to convert the whole estate into money in such manner "as he shall judge to be for the best interest of all the legatees named," and "to pay the legatees named their respective sums" as soon as may be, and directs that if the estate should prove

insufficient to "pay the legacies in full," a proportionate de-
duction is to be made "from each legacy named," but that if
there be "more than sufficient to pay the several legacies
herein named," the surplus shall go "to all the legatees named
in this will, to be equally divided among them all, all to share
and share alike, and in equal amounts of the same." This
use of the word "named" as descriptive of all the legacies,
that were to be paid, shows that he meant it, when employed
to designate legatees, to have the same application, and in-
clude all to whom these legacies were to be paid. He had
directed that certain sums should be paid under the twenty-
five preceding "items" of his will, and the sums so named
were the "legacies herein named." Those who were to re-
ceive them were equally "named," whether described by
their proper individual names, or as members of a class like
"heirs" or "children," or as occupying a certain relation to
another, such as a "husband." *Bromley* v. *Wright,* 7 Hare,
334.

It is equally evident that while he meant that those who
might suffer by an abatement, in case of a deficiency of the
estate, should be the ones to profit by a surplus, in case a
*residuum* were formed, he did not intend that in that event
they should have a precisely corresponding benefit. Any
abatement was to be proportional, as respects each legacy;
but any increase was to be the subject of equal distribution
among "all the legatees named."

Following the interpretation already assigned to the term
"all the legatees named," by which it is to be understood to
include those named by any class description, we think that
the class receiving any legacy, however numerous, should be
treated as a unit, as respects the division of the surplus. The
right to share in it was an incident of each of these legacies,
and it is more reasonable to suppose that the testator intended
the number of shares to be that of the different legacies that
took effect, than that of the individuals between whom these
legacies might, by the accident of death and consequent sub-
stitution, happen to be divided. It was uncertain, in the tes-
tator's mind, whether there would be any residuary estate.

There were, in all, twenty-seven legacies given to as many individuals or classes, and of these eighteen were subject to lapse. The number of residuary shares, therefore, under the construction of the will which we adopt, could not exceed twenty-seven, and might be only nine, while if the division were to be made *per capita*, among all the individuals who shared in any legacy, the portion of each might be a mere trifle. It is to be presumed that the testator intended that his residuary legatees should receive, if anything, what would be of substantial benefit.

The Superior Court is advised to enter a decree in conformity with this opinion.

In this opinion the other judges concurred.