FREDERICK C. ZIMMERMAN, ADMINISTRATOR, ET AL. vs. THE MECHANICS SAVINGS BANK.

First Judicial District, Hartford, May Term, 1903. TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

Technical rules or usages of punctuation, grammar, and literary composition, are not to be greatly relied upon in construing a will, especially if it is apparent that the testator knew but little of them.

A testator gave to his wife his "house and lot, with household furniture, beds, bedding, books, linen, and all and everything contained in said house and shed; also all moneys that may be deposited on my account at the New Britain Savings Bank, or any other bank, during the term of her natural life; and after her death to be equally divided among my legal heirs." This property comprised all his

estate. *Held* that the limitation to a life use which qualified the savings-bank deposits did not reach back to the house and lot, and therefore the wife took a title in fee simple to that portion of the estate.

Argued May 12th—decided June 4th, 1903.

ACTION to settle the title to real estate, brought to the Superior Court in Hartford County and reserved by that court, *Shumway, J.*, upon an agreed finding of facts, for the consideration and advice of this court. *Judgment advised for defendant.*

Paul Revoir died childless in 1869, seized and possessed of an estate in fee simple in the real estate in controversy. He left a will which was duly probated and of which his widow, Bertha Revoir, became the duly qualified executrix. The will, after its introductory words, proceeds as follows : " . . . do therefore make, ordain, publish and declare, this to be my last will and testament. That is to say, after all my lawful debts are paid, and discharged, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to wit.

" To my beloved wife, Bertha Revoir the house and lot situated on Prospect St. New Britain, Ct. with household furniture, beds, bedding, books, linen, and all and everything contained in said house and shed; also all moneys that may be deposited on my account at the New Britain Savings Bank, or any other bank, during the term of her natural life; and after her death to be divided equally among my legal heirs."

Then follows a paragraph appointing his wife executrix, and the subscription and attestation clauses.

In 1886 and 1888 said Bertha, believing that she was the owner in fee of the premises in question, executed to the defendant two mortgages thereof as security for money then loaned. By the foreclosure of these mortgages the defendant claims to have become the owner of said premises.

Bertha Revoir died May 7th, 1901. The plaintiffs other than Zimmerman, administrator, are the only heirs at law of Paul Revoir. Zimmerman is the administrator *de bonis*

upon Paul's estate. The plaintiffs claim that under Paul's will Bertha took only a life estate in her husband's real estate, with the consequence that the defendant now has no interest in the mortgaged premises, and that the same has passed to them as Paul's heirs at law and representatives.

*Noble E. Pierce* and *George W. Klett*, for the plaintiffs.

*Charles E. Perkins*, for the defendant.

PRENTICE, J. The reservation raises a single question only. That relates to the construction to be placed upon the provisions of Paul Revoir's will. The question is whether his widow, Bertha, by its terms, took an estate in fee in the testator's real estate or only a life estate. The reason for a doubt is easy to discover. In our attempt to resolve it, we find little to aid us either in extrinsic circumstances or other provisions of the will itself which might shed light upon the testator's intention. The record is practically silent as to the circumstances which surrounded the testator when he made his will, and the few lines which create the ambiguity exhaust its provisions, save only such as are formal. These lines, therefore, must furnish the means for their own interpretation.

The thing to be sought after is the testator's intention. Counsel urge upon us as aids in this search certain technical principles of interpretation which they regard as supporting their respective contentions. These, for the most part, relate to the collocation of the words employed by the scrivener, the formation of the sentences or parts of sentences, the precise force to be given to particular words in certain connections, and the punctuation. Some of these principles are purely those of composition, grammar, or punctuation, while others are cited as having received at least *quasi*-legal authority. The trouble with all of them is that their value rests upon an assumption of some compliance on the part of the writer with accepted literary usages. Their significance in interpretation, therefore, becomes of diminished value when the

subject-matter to be interpreted is manifestly framed by one who knows little or nothing of such usages, and is in his use of language and literary construction for the most part a law unto himself. The will under review, as the parts not quoted in the statement of facts most clearly show, was the work of one who knew little of the proper use of language, to say nothing of the accepted requirements of good written expression and grammatical construction. Any attempt, therefore, to gather the testator's intention from the form in which he has expressed it, by the application of nice rules of correct composition and the refinements of literary interpretation, is one which could hardly be expected to be fruitful of correct results. These rules have their uses, but their value of themselves is by no means an unvarying one. In connection with other considerations their significance is oftentimes merely incidental and of little importance. *Ewing* v. *Burnet*, 11 Pet. 41; *Jackson* v. *Topping*, 1 Wend. 388; *Gray* v. *Clark*, 11 Vt. 583.

If we examine this will to discover some indication of intention which seems to have substantial value and which is not dependent for its value upon the mere arrangement of words, or punctuation, or technical rules governing written expression, there is one which appeals to us as being entitled to real significance and by far the greatest weight. The testator was plainly attempting to make his wife a beneficiary in all his estate left after the payment of his debts. It is clear that under the videlicet he sought to make an enumeration of all his estate, which enumeration he made in two groups or classes. Manifestly he intended to give his wife only a life estate in his moneys in savings-banks which comprised the second of the groups of enumerated property. If he intended to give her a like estate only in the balance, to wit, the house and lot and other property enumerated in the first group, it is difficult to understand why he took the pains to make the enumeration at all, and above all to make it in two entirely separate classes. Using, doubtless, some form at his command, the testator or scrivener had prior to the videlicet prepared the way for a simple bestowal upon his wife

Zimmerman *v.* Mechanics Savings Bank.

of a life estate in all the residue which had been aptly described. He had only to add that this residue was given to her, and then make the limitation to her life use in the language he subsequently used. That was the simple and natural thing to do, if that was what he wished to accomplish. That he did not adopt this simple method admits of no plausible explanation except upon the theory that such a provision would not meet the testator's wishes. The fact that the scrivener was an inexperienced draughtsman only emphasizes this conclusion. To such a man the easy and direct way would be the natural way. Instead of that, he enters upon an attempt to enumerate and classify into two classes the property already amply described in general terms. Evidently he had a purpose. The classification very clearly indicates that purpose. It was to create one class of property to be given in one form or interest, and another to be differently bestowed. These considerations convince us that the testator's intention would be defeated if the limitation to a life use which qualifies and limits the gift of the savings-bank deposits should be carried back to the house and lot and other property contained in the first group of enumerated property.

The Superior Court is advised that Bertha Revoir, under the will of her husband, Paul Revoir, took an absolute estate in the real estate described in the complaint, and that appropriate judgment for the defendant should be rendered accordingly.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.