HENRY H. PERRY, ADMINISTRATOR C. T. A., *vs.* BENJAMIN A. BULKLEY ET ALS.

Third Judicial District, Bridgeport, April Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Declaring that he intended to dispose of all his worldly estate, a testator, who died in 1881, after providing for his wife and making some pecuniary legacies, gave the "residue" of his property in equal shares to his only brother and his only living sister. His brother having died childless, a codicil gave such brother's half of the residue to the testator's niece for life, with remainder in fee to "the heirs or issue of her body begotten." Still later a second codicil provided that if this niece died "without issue," the testator's homestead should go to the children of his uncle *G*, who were also to "participate equally" with the testator's "legal heirs" in "whatever balance there may be over and above the homestead." This codicil also contained a bequest of $1,000 to the testator's namesake. In a suit to construe the will it was *held:*—

1. That inasmuch as the second codicil provided for the contingency of the death of the niece "without issue," it was quite clear that the testator supposed that by giving the remainder to the niece's "heirs or issue of her body begotten," he had provided for the other contingency, to wit, the death of the niece leaving issue; and therefore the expression, as intended by the testator, was to be regarded as synonymous with "issue."

2. That there was nothing in the context to indicate that the testator used the word "issue" in any other than its primary and usual meaning, as including descendants of whatever degree; and therefore the gift over, attempted to be made by the first codicil, was void under the then existing statute against perpetuities.

3. That the legacy of $1,000 to the testator's namesake, contained in the second codicil, was absolute and unconditional.

4. That the gifts over, contained in that codicil, were conditioned upon

the niece's death without issue at any time—not necessarily before that of the testator.

5. That the subject-matter of such gifts—aside from that for $1,000—was the same as that which was the subject of the gift over in the first codicil; the second embodying, however, an implied direction that the homestead, including the adjoining land, should be allotted to that half of the residue of which the niece was to have the life use.

6. That *G's* five children took alienable and transmissible estates as equal tenants in common, under the second codicil, subject only to the life estates of the widow and niece.

7. That the "balance" over and above the homestead, meant the rest of that portion of the residuum of which the niece took the life use, after the homestead had been deducted from it.

8. That the "legal heirs" of the testator were those who, in the absence of a will, would have been entitled by law to inherit his real estate; there being nothing to suggest that the testator used the term in any other sense.

9. That such heirs were to be ascertained as of the time of the testator's death, and not at the death of the niece, the life tenant; and therefore the gift over to them, in common with *G's* children, was valid.

10. That the children of *G* took in equal undivided shares one half of the "balance," and the testator's heirs, viz., his sister and niece, the other half.

11. That the question whether the several interests of the niece acquired by descent and under the will should merge, was one that this court ought not to undertake to determine upon the facts before it; although it was apparently for her interests to have a merger.

If the testator's estate exceeded $100,000 in value, the widow and niece were each to receive one half of the excess. *Held* that in determining the value of the estate for the purpose of ascertaining this excess, the homestead should be valued and inventoried at $20,000, as directed by the testator.

The net inventory value of the estate was $111,000. *Held* that the "residue" was what was left after deducting: first, the excess above $100,000; second, the sum total of the pecuniary legacies; and third, the inventory value of the personal property given to the widow.

Words used by a testator which have a well-defined, primary meaning, should be construed accordingly, unless it appears that they were used in a different sense, when they will be given the meaning which he intended they should carry, if, as thus understood, the provisions of the will as applied to the estate would have an intelligible and sensible import.

Too great emphasis should not be placed upon a precise construction of language or phraseology, where it is apparent that the expressions

of the will are those of an unskilled draftsman, or of one unfamiliar with legal terms.

Argued April 14th—decided May 25th, 1909.

SUIT to determine the validity and construction of the will of Henry T. Bulkley, late of Fairfield, deceased, brought to and reserved by the Superior Court in Fairfield County, *Gager, J.,* upon an agreed statement of facts, for the advice of this court.

Henry T. Bulkley died October 28th, 1881, leaving a widow, but no issue, and an estate, which, after the payment of all debts and charges, amounted, upon the basis of the inventory, to $111,258.23. He left a will, executed in 1871, to which were attached two codicils, one executed in 1876 and the other in 1878. In the original will he provided for his widow by giving to her the life use of his homestead and of $30,000, and by giving to her absolutely $20,000, one half of the excess of his estate over $100,000, and all the personal property in or about the homestead. These gifts were expressed to be in lieu of dower. To Miranda B. Merwin, the only child of a deceased sister, he gave $3,000, and to another person $1,500. All the rest, residue and remainder of his estate he gave to his only brother, Augustus, and his only living sister, Mrs. Francis D. Perry, share and share alike. In the introductory clause of the instrument he expressed his intention of disposing of all of his worldly estate of which he might die possessed, and in the closing paragraph he provided that the will should be void if he should leave a child, and also if his wife should die before him. The two codicils, exclusive of the subscription clauses, are as follows:—

## FIRST CODICIL.

"Whereas I, Henry T. Bulkley, of the Town and County of Fairfield, State of Connecticut, have made my last will and testament in writing, bearing date the 23rd day of October,

A. D. 1871, in and by which I have given, devised and bequeathed, under the 8th section and under the last clause of said will, certain of my estate to my sister, Ann Eliza, and to my late brother, Augustus:

"Now, therefore, I do, by this writing, which I hereby declare to be a codicil to my last will and testament, and to to be taken as a part thereof, give, devise and bequeath the one-half part of all the rest, residue and remainder of my estate, both real and personal, (excepting as qualified in the last clause of my said will) to my sister, Ann Eliza, wife of Francis D. Perry, to her and her heirs forever.

"To my niece, Miranda B. Merwin, I do give and bequeath the income, use and improvement of the balance, or other one-half, of said rest, residue and remainder of my estate, as aforesaid, during the term of her natural life, and the remainder, after her decease, to the heirs or issue of her body begotten, absolutely and forever.

"I order and direct that the homestead, devised to me by my late brother, Augustus, shall be distributed to my niece, Miranda, at a valuation of five thousand dollars, as a part of said residue, devised and bequeathed to her, to be used and enjoyed by her as aforesaid.

"And whereas, by the last clause of my said will and testament, I have directed that if the amount of my whole estate, real and personal, shall exceed the sum of one hundred thousand dollars, upon a just valuation and inventory, the one-half of said excess shall go to my wife, Rebekah W., now, therefore, I do, by this writing, confirm said bequest of said one half of said excess to my said wife, Rebekah W., and I do hereby bequeath the remaining one-half of said excess to my said sister, Ann Eliza, and to my niece, Miranda, share and share alike, to them and their heirs absolutely and forever.

"For the purposes of my said last will and testament, and of this codicil thereto, I hereby order and direct that in the settlement of my estate, my own homestead, including the

land, about six acres, shall be valued at the sum of twenty
thousand dollars.

"In all other respects and particulars I do hereby ratify
and confirm my said last will and testament aforesaid."

### SECOND CODICIL.

"If my neice, Miranda B. Merwin, dies without issue, I
wish the homestead where I live, including house and six
acres of land, to go to the children of my uncle, George
Bulkley, in equal shares; and they are to participate equally
with my legal heirs in whatever balance there may be over
and above the homestead, according to my will. I give my
namesake, Henry Bulkley Rodman, one thousand dollars."

At the time of the making of the will, the brother Augus-
tus, the sister Mrs. Perry, and the niece Miranda B. Mer-
win, were the testator's nearest relatives. Augustus died
before the first codicil was executed, leaving no descend-
ants. Mrs. Perry, who was born in 1817, died in 1893. She
never had children. Miranda B. Merwin, born in 1847, is
still living. The heirs of the testator at his decease were
Mrs. Perry and Miranda. Miranda has never married, and
her next of kin at the time the will was made was and ever
since has been her half-brother, who was not related to the
testator. George Bulkley, named in the second codicil,
had five children, the youngest of whom was born in 1853.
All survived the testator. The testator was warmly at-
tached to them, and was much with them. The same was
true of Miranda B. Merwin, who, until she became twelve
years of age, was a member of the same family as the testa-
tor. The widow survived until 1908.

*Elmore S. Banks,* for the plaintiff.

*Livingston W. Cleaveland* and *Harrison Hewitt,* for
Miranda B. Merwin.

*Edward L. Clark, Jr.,* for estate of Ann Eliza Perry.

*William B. Boardman,* for Benjamin A. Bulkley *et als.*

PRENTICE, J. This will was made subject to its becoming void upon the happening of certain contingencies which never happened. These provisions may, therefore, be dismissed from consideration.

All the questions presented arise out of the language of the two codicils. By the terms of the original will the testator divided "all the rest, residue and remainder" of his estate equally between his only brother, Augustus Bulkley, and his only sister, Mrs. Perry, to them and their heirs forever. It is apparent that the death of this brother, childless, prompted the execution of the first codicil, and that its chief purpose was to substitute for him, as the beneficiary of one of the equal shares of the residuary estate, Miranda B. Merwin and her issue. It contains a provision for the bestowment, absolutely, of the excess of the testator's estate over and above $100,000, thereby reducing the amount of the possible residue, and makes one or two incidental directions relating to the settlement and distribution of the estate, but for the rest the testator concerns himself solely with the disposition of the residue. The gift of one half of it absolutely to Mrs. Perry is repeated. New provisions take the place of those which in the will gave the other half to Augustus. This half is no longer given to any person outright. Miranda B. Merwin, the only child of a deceased sister, is made the life tenant of it. The reason for this failure to bestow upon Miranda an absolute estate, such as had been given to Augustus, may be found in the fact that her next of kin was not of the kindred of the testator. But with this we are not concerned. Of that which in the will had been given to Augustus, there was left undisposed of the remainder upon the termination of Miranda's life estate, and the testator provided that it should go "to

Perry *v.* Bulkley.

the heirs or issue of her body begotten, absolutely and forever."

This provision presents a question as to the effect of the attempted gift over. It is clearly void unless the quoted language describing the beneficiaries is to be interpreted as synonymous with children. The ambiguity of the language is apparent, and it is the duty of the court to determine and declare the intent of the testator thereby expressed. In so far as the language has a well defined and recognized primary meaning, that meaning should be accorded to it unless it appears that the testator used it in a different sense, when it should be given the meaning which he intended should be attached to it, if, thus understood, the provision of the will as applied to the estate would have an intelligible and sensible import. *Leake* v. *Watson*, 60 Conn. 498, 500, 21 Atl. 1075; *Connecticut T. & S. D. Co.* v. *Chase*, 75 Conn. 683, 692, 55 Atl. 171. The terms "heirs," "heirs of the body," "issue," and "issue of the body," in their primary legal meaning comprehend more than immediate issue. *Bartlett* v. *Sears*, 81 Conn. 34, 39, 70 Atl. 33; *Ruggles* v. *Randall*, 70 Conn. 44, 48, 38 Atl. 885. Certain of the parties claim that the words "of her body begotten" should be construed as qualifying both the words "heirs" and "issue," and that the use of the word "begotten," in this connection, clearly indicates the intent of the testator to limit the gift over to the immediate issue of Miranda. It is quite apparent that this codicil, as also the second, was not the production of a skilled draftsman, or of a person familiar with legal terms. Care should therefore be taken that too great emphasis should not be placed upon a precise construction of language or phraseology. *Zimmerman* v. *Mechanics Savings Bank*, 75 Conn. 645, 647, 54 Atl. 1120.

If the unusual collocation of words which the testator employed was to be interpreted without reference to the second codicil, there might be doubt as to what he sought to express thereby. The latter codicil, however, throws a

very clear light upon the matter. In the will and first
codicil there was no attempt made to dispose of the re-
mainder in question in the event that Miranda, who was
unmarried, should die without "heirs or issue of her body
begotten." This would be apparent to any intelligent lay-
man. The second codicil was, beyond doubt, prompted by
a desire on the part of the testator to supply this deficiency,
and thus to accomplish the result which, in the introduc-
tory paragraph of his will, he announced to be his intention
in making it. To be sure it contained a legacy of $1,000.
But aside from that its sole purpose manifestly was to sup-
plement the existing provisions of the will and first codicil.
There was no purpose to change or modify them in so far
as they might become operative, or to substitute anything
for them. He apparently appreciated that he had failed
to fully provide against the possibility of partial intestacy,
and sought to incorporate into his testamentary instrument
a provision which would prevent that result. This pal-
pable fact possesses significance in the construction of the
language of the codicil, as we shall have occasion to notice
later. It possesses the additional significance that the
testator therein used language defining the contingency for
which he was providing, and that he defined it as the con-
tingency that Miranda should die without issue. The in-
ference is irresistible that he understood that he had by his
language in the former codicil provided for the event of her
death leaving issue. We have, therefore, the testator's ex-
pression of his intended meaning—his own definition of his
language. This definition makes the phrase in question
synonymous with "issue." "Issue," when used as a word
of purchase, means primarily and usually descendants of
whatever degree, and that is the meaning which will be
given to it in a will, if, when thus construed, the provisions
of the will, when applied to the estate, have an intelligible
and sensible meaning; unless the context shows that the
testator employed it in a different sense. *Bartlett* v. *Sears,*

81 Conn. 34, 39, 70 Atl. 33. There is nothing in this context to indicate that the testator did not use the word in its ordinary sense. The attempted gift over after the death of Miranda of that portion of the estate of which the life use was given to her, as contained in the first codicil, is therefore void.

It remains to construe the second codicil. It contains a gift of $1,000 to Henry Bulkley Rodman. This gift is not to be construed as conditioned upon Miranda B. Merwin's death without issue, but as a legacy which is to be paid in any event, and its amount is to be taken from the estate in determining the residuum. The other provisions of this codicil are conditioned upon the event stated. That event is not Miranda's death without issue before the testator's, but her death at any time without issue. The purpose which this codicil was intended to serve, already and sufficiently pointed out, negatives any other conclusion. The gift over in the first codicil was referable to her death leaving issue whenever it should occur. The second codicil was manifestly intended to meet the same contingency of death at any time, but without leaving issue, thus providing for either of the possible situations which might develop at her death.

These considerations, growing out of the intended office of the second codicil, also indicate clearly that the subject-matter of its provisions, aside from those making the legacy of $1,000, is the same as that which was the subject of the gift over in the first codicil, that is, that portion of the residuum in which Miranda was given a life estate, and nothing more or less. In speaking of this property the testator enumerated the homestead where he lived, including the house and six acres of land, and having disposed of that, disposed of whatever balance there might be over and above the homestead. A question is presented as to what is to be regarded as embraced in this gift of the homestead, whether the whole or half of it, or what, and also as to the effect which the gift, whatever it is to be construed to include, is

to have upon prior provisions, and especially that one of the first codicil which gives to Mrs. Perry one half of the residuum. The answer is made clear when the purpose of the codicil, already noticed, is recalled, and it is borne in mind that the subject-matter with which the testator was attempting to deal was nothing outside of what had been given to Miranda for life, and that he had no intent to change or modify the benefactions he had already made or to subtract anything from what he had already given. The first codicil had given one half of the residuary estate to Mrs. Perry absolutely. The other half was given to Miranda for life. The homestead was not specifically assigned to either of these shares. It might, therefore, have been distributed to either, or a part to each. The second codicil, however, clearly indicates the testator's intention to have it set to Miranda's share. Otherwise the codicil would be traveling outside of that share, the testator would no longer be confining himself to providing for a contingency for which provision had not been made previously, the death of Miranda without issue would be made to result in taking from Mrs. Perry what had been given to her absolutely, and the scheme of the will maintained from the beginning, that the residue should be divided into two equal portions and that Mrs. Perry should take one of them absolutely, would be upset. The codicil must, therefore, be construed as embodying an implied direction that this homestead be distributed to the share set out to Miranda's use, and the subject-matter of the gift over, described as the homestead, including the house and land, is to be taken as referring to the whole of it. There is no question of the right of the children of George Bulkley to take what was thus given to them, and they took as equal tenants in common.

The codicil next deals with "whatever balance there may be over and above the homestead." This balance is, of course, the balance left of that portion of the residuum of which Miranda had been given the life use after the home-

stead should be taken out of it. It is provided that the children of George Bulkley participate equally with the testator's legal heirs in this balance. The testator's legal heirs, in the primary meaning of that term, were those who in the absence of a will would have been entitled by law to inherit by descent his real estate. *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885. There is nothing to indicate that he used the term in any other sense. The persons who are described as being entitled to participate with the Bulkley children are the testator's heirs ascertained as of the time of his death, and not, as claimed by certain of the parties, his heirs to be ascertained upon the death of Miranda, the life tenant. The gift over to them, conditioned upon the death of Miranda without issue, was therefore a valid one. *Thomas* v. *Castle,* 76 Conn. 447, 451, 56 Atl. 854; *Ingersoll* v. *Ingersoll,* 77 Conn. 408, 410, 59 Atl. 413. These heirs were Mrs. Perry and Miranda. The widow is not to be included. *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885; *Morris* v. *Bolles,* 65 Conn. 45, 58, 31 Atl. 538.

The parties who would be entitled to participate in the division of this "balance" having been ascertained, we have next to determine the basis of their participation. The codicil states that the children shall participate equally with the heirs. By this is meant, we think, that the children of George Bulkley, as one group, should take one half between them, and the heirs between them the other half. In the division between the two heirs Mrs. Perry and Miranda would be entitled to share equally. The basis of division, therefore, would be one half to the children of George Bulkley as equal tenants in common, and one quarter each to Mrs. Perry and Miranda B. Merwin.

It thus appears that Miranda has a vested interest by right of descent in one half of that one half of the residuary estate which by the first codicil is given to her for her life, subject to her life estate. That interest, however, is a vested one only in the sense that it is capable of alienation,

and the subject of succession by inheritance. It is not a vested one in the stricter sense that it is certain to come into possession upon the termination of the preceding life estate. It is made contingent upon her death leaving issue. *Johnson* v. *Edmond,* 65 Conn. 492, 499, 33 Atl. 503; *Ingersoll* v. *Ingersoll,* 77 Conn. 408, 410, 59 Atl. 413.. In the alternative contingency that she should die without leaving issue, she, by force of the second codicil, takes, as purchaser, a vested interest by way of contingent remainder in one fourth of the same one half of the residuary estate less the homestead. The question whether these several estates and interests in this one fourth of that one-half portion of the residuum which is Miranda's for life, exclusive of the homestead, shall be regarded as merged, thereby giving her an absolute estate therein, is one which we ought not to undertake to determine upon the facts before us. It would appear to be for her interest to have a merger. Under such conditions the ordinary rule is that a merger results. But to this rule there are exceptions, as where general convenience requires the contrary. *Lockwood* v. *Sturdevant,* 6 Conn. 373, 389. In the absence of sufficient practical reasons to the contrary, a merger should be recognized to the limited extent indicated.

In addition to such absolute estate as Miranda may have acquired by the merger of estates as aforesaid, she took an absolute estate in the $3,000 legacy contained in the sixth paragraph of the will, and in one fourth of the excess of the net amount of the testator's estate upon a just valuation and inventory above $100,000. In determining the value of the estate for the purpose of ascertaining this excess, the homestead in which the testator lived should be valued and inventoried at $20,000.

In determining what comprised the rest, residue and remainder, one half of which was given to Mrs. Perry absolutely, and the other half to Miranda for life with remainder over, there should be deducted from the net amount of the

estate its excess above $100,000, ascertained as above, the amount of the several money legacies contained in the will other than said excess, the amount of the legacy to Henry Bulkley Rodman, and the inventory value of the personal property given to the widow by the third paragraph of the will. The balance, subject to such life use of portions thereof as was given to the widow, represents the residuum.

The second codicil gave to the five children of George Bulkley alienable and transmissible estates. *Johnson* v. *Edmond,* 65 Conn. 492, 499, 33 Atl. 503.

The Superior Court is advised to render judgment in conformity with the foregoing conclusions.

In this opinion the other judges concurred.