JOHN F. CARPENTER, TRUSTEE, vs. MARY E. PERKINS ET ALS.

First Judicial District, Hartford, January Term, 1910.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

By his will, executed in 1851, a testator left three fifths of his property, real and personal, in trust for the equal use of his three daughters, A, B, and C, during their respective lives, directing the trustee, upon the death of either daughter, to deliver and transfer to her children the property of which she had received the income, in equal or such other proportions as she might prescribe by her will, " to be to said children respectively, and to their heirs, administrators and assigns forever." At the date of the will and at the testator's death there were children living of each daughter, and no children were born to any of them afterward. In case either daughter died " without leaving children," her portion was to go to the surviving daughters for life, " a moiety " to each, and the remainder in fee to their children. A codicil, made in 1852, and after the purchase of additional real estate, devised three fifths of that in trust for the use and benefit of " the heirs of A, B and her heirs, and C and her heirs," to be held, managed and disposed of in the same manner as the property placed in trust by the will. A died in 1852 before the codicil was made, leaving three surviving chil-

dren; *B* died intestate in 1874, leaving two surviving children, and *C*, also intestate, in 1908, leaving no surviving descendants. The trust property then remaining, of which *C* had received the income, consisted of $60,000 in stocks or other securities, which had increased in value from time to time through a rise in prices and by a sale of "rights." In a suit to determine who were entitled to this fund it was *held:*—

1. That upon the testator's decease, *C's* two children, who were then living, took a vested remainder in fee in that share of the trust property of which their mother was entitled to the income, subject, however, to be divested—as it was—by their death before her.

2. That the children of *A* and *B* also took, *per stirpes*, but severally and not as a class, a vested, transmissible interest by way of a contingent remainder in that portion of the trust property of which *C* had the life use, which interest became an absolute estate in 1908 when *C* died leaving no children; and that "a moiety" or one half of the fund in question was therefore distributable to the three children of *A* in equal shares, and one half to the three children of *B;* or, in case of their decease, to the executors or administrators of each respectively.

3. That the question as to who would be entitled to take the ultimate benefit of such portion of the fund as was to go to the estates of the children of *A* and *B* who had died since the testator, was not one upon which this court would advise in the present proceeding.

4. That the terms of the codicil, which was executed after *A's* death, indicated that the testator intended *A's* children to take the same estate as if *A* had died after him.

5. That the allusion to the death of a daughter "without leaving children" had reference to such a death whether occurring before or after that of the testator.

6. That the will did not include, as beneficiaries, descendants more remote than the testator's grandchildren.

7. That those entitled to the fund were entitled to take it as it stood, with its added or increased value.

The expression "heirs, administrators, and assigns" will be treated as words of limitation rather than of purchase, if, when read in the latter sense, they would make a remainder in their favor void under the statute against perpetuities existing at the date of the will and at the testator's death.

The law favors the early vesting of estates.

The primary legal meaning of "children" does not include remoter descendants.

The case of *Bristol* v. *Atwater*, 50 Conn. 402, distinguished.

Submitted on briefs January 6th—decided January 18th, 1910.

ACTION by the trustee under the will of Smith Wilkin-

son of Pomfret, deceased, for a judicial construction of it, brought to the Superior Court in Windham County and reserved (*Robinson, J.*), on answers admitting the truth of the complaint, for the advice of this court.

The testator left both real and personal estate. His will was executed in 1851, and there was a codicil executed in 1852, in which year he died.

The will, after providing for certain charges and expenditures, contained this provision: "I give, devise and bequeath two-fifths of all my estate subject to the provisions aforesaid to my son Edmund Wilkinson, to be to him and to his heirs, administrators and assigns forever. The other three-fifths of my estate, I give, devise and bequeath to the said Edmund Wilkinson, and to his heirs, administrators, successors and assigns, upon the special trust following, to wit: That the rents, profits, interest and income thereof, after deducting all expenses justly chargeable thereto, for its management, safe keeping, and for taxes, repairs, and insurance, the said Edmund shall pay over annually (the first payment shall be made in one year from the time of my decease) in equal proportions to my daughters, Abilene Howe Whitaker, Elizabeth M. Perkins, and Nancy W. Mason, during their natural lives, and to their sole and separate use, and upon the death of either of my said daughters, to pay over, deliver and transfer to the children of such daughter, the one-fifth part of my estate, from which the mother shall have received the income as aforesaid, in equal, or such other proportions as my said daughter in her last will and testament shall direct, to be to said children respectively, and to their heirs, administrators and assigns forever—And in case either of my said daughters shall die without leaving children, then her portion shall go to the surviving daughters—and to their children, to each daughter a moiety in manner aforesaid, that is to say, the rents, profits and income to the daughters, and the fee to their children when entitled to receive the same."

A provision followed for a partition, should it be desired, of the several fifths of the estate so as to divide it into separate trust funds, and authorizing sales of real estate by the trustees.

The codicil was added in consequence of the death of the testator's daughter Elizabeth, and of his purchase of a farm after the execution of the will; and disposed of the farm as follows: "I do hereby give, devise and bequeath, to my son Edmund Wilkinson, two-fifths parts of said farm, to him, his heirs, and assigns forever. I hereby give, devise and bequeath to my said son, Edmund Wilkinson, three-fifths parts of said farm, in trust, for the use and benefit of Abilene H. Whitaker and her heirs; the heirs of Elizabeth M. Perkins; and Nancy W. Mason and her heirs, to be held, managed and disposed of in the same manner as the estate given to him in trust by my said last Will and Testament."

At his death his heirs at law were Edmund Wilkinson, Abilene Howe Whitaker, Nancy W. Mason, and three children of Elizabeth M. Perkins. At the date of the will and at his decease, there were children living of each of his daughters, and no children were born to any of them afterward.

Abilene H. Whitaker died, intestate, in 1874, leaving two surviving children. They were living at the date of the will and of the testator's death, together with another daughter, who died in 1859.

Nancy W. Mason died testate, September 30th, 1908, leaving no surviving descendants. Long before, there had been partitions, sales, and distributions under the will, which left nothing remaining at that date in the hands of the plaintiff as trustee, except about $60,000 in personal property representing the fifth of which Mrs. Mason had the life use. This fifth had increased considerably in value during her lifetime, partly by a rise in the value of securities and partly by sales of rights to subscribe for new stock of

corporations in the stock of which investments had been made.

*John F. Carpenter,* for the plaintiff.

*Donald G. Perkins,* for Robert W. Perkins, administrator, *et als.*

*George E. Beers,* for Mary E. Perkins, personally and as executrix.

*Charles L. Torrey,* for Julian D. Taylor, administrator, *et als.*

*Gardiner Greene,* for Henry R. Bond, Jr., administrator, *et als.*

*Wallace S. Allis* and *Andrew B. Davies,* for A. B. Davies, administrator, *et als.*

*Samuel Park,* for Margaret H. Whitaker *et als.*

BALDWIN, C. J.  By the provisions in the will for a transfer by the trustee, on the death of either daughter, to her children "to be to said children respectively, and to their heirs, administrators and assigns forever," a transfer of an absolute estate in the personalty and a fee simple in the realty was intended.  The words "heirs, administrators and assigns" must be taken as words of limitation.  To read them as words of purchase is inadmissible, since it would make the remainder in their favor. void, under the statute of perpetuities existing at the date of the will and of the testator's decease.  *St. John* v. *Dann,* 66 Conn. 401, 405, 34 Atl. 110.  The devise in the codicil, to the trustee, in favor of "Nancy W. Mason and her heirs, to be held, managed and disposed of in the same manner as the estate

given to him in trust by my said last will," manifestly requires the same construction.

If there were any doubt otherwise as to this point, it would be removed by the express provision as to an estate in fee in case of the death of a daughter leaving no children, in which event the future income of her fifth is to go to the surviving daughters, "and the fee to their children when entitled to receive the same."

Under the rule that the law favors the early vesting of estates, the interests in remainder of the children of Mrs. Whitaker and Mrs. Perkins became vested in them immediately upon the testator's death, so far as to give to each a transmissible estate.

The children of Mrs. Whitaker had a vested remainder in the fifth of which she had the life use, although it was subject to a condition subsequent, namely, the event of their dying before her. Gray on Perpetuities (2d Ed.) § 102.

They also had a vested interest by way of a contingent remainder in a part of the fifth of which the life use was left to Mrs. Mason; that is, their interest was so far vested as to be transmissible, though it was defeasible by her death leaving surviving children. *St. John* v. *Dann*, 66 Conn. 401, 409, 34 Atl. 110. When she died, leaving no children, the contingency disappeared and the estate became vested and absolute in the two children of Mrs. Whitaker who then survived, and in the estate of their deceased sister, Mary A. Mason. *Johnson* v. *Edmond*, 65 Conn. 492, 499, 500, 33 Atl. 503; *Ingersoll* v. *Ingersoll*, 77 Conn. 408, 410, 59 Atl. 413; *Perry* v. *Bulkley*, 82 Conn. 158, 168, 72 Atl. 1014.

The original interests in remainder of Mrs. Perkins' children in the fifth of which Mrs. Mason had the life use were, subject to the same contingency, vested in like manner.

The fact that the testator made the proportion of each child of Mrs. Whitaker or Mrs. Mason subject to the will of the mother, did not vary the result. Each child would

take something, be his proportion large or small; and even had this not been so, the estate would have been—so far as this power of appointment was concerned—simply defeasible, though vested. *Mallory* v. *Mallory,* 72 Conn. 494, 500, 45 Atl. 164.

The interests in remainder of the children of Nancy W. Mason, who were living at the testator's decease, so far as concerns their succession to the entire trust fund of which she had the life use, were also vested in them so as to be transmissible; but the title transmitted was a defeasible one, and their death before hers defeated it. *Ingersoll* v. *Ingersoll,* 77 Conn. 408, 59 Atl. 413.

So far as concerns the provision for the succession on the occurrence of the death of a daughter without leaving children surviving her, the scheme of distribution prescribed in the will had an alternative operation, which gave the fifth of the estate, now in question, if Mrs. Mason left children surviving her, to them; but if she left none, it was to go for life to the surviving daughters of the testator, one moiety to each for her life, with remainder to her children.

The use of the word "moiety" is here controlling. One half, no more and no less, in case of the death of a daughter leaving no children surviving her, is given to each of the other daughters and their children. The testator, when he drew his will, must have contemplated as possible the death of two of his three daughters without leaving surviving children, but he did not provide that in such event the whole of the fifth of which the last to die had enjoyed the use, should go to her who would then be the sole surviving daughter, and to her children. The will, accordingly, should be read as if it provided that in case either of the testator's daughters should "die without leaving children, then her portion" should be divided into two equal parts, one of which should go to each of his two other daughters for life, with remainder to her children in fee.

VOL. LXXXIII—2

There was therefore no interest whatever in the children of Mrs. Mason, who died before her, in the fifth now in question, after her decease. So the will is written and, as written, it must be given its legal effect.

In view of the circumstances surrounding the testator, and his intent to provide for both children and grandchildren, the reference to the death of a daughter without leaving surviving children, must be read as embracing such a death whether occurring before or after his own. *Hollister* v. *Butterworth*, 71 Conn. 57, 60, 40 Atl. 1044.

None of these conclusions bar the claims of the children of Mrs. Perkins. The codicil was written after her death. The will, as well as the codicil, therefore, speaks from that time, and the terms of the codicil clearly indicate that the testator intended her children to take the same estates as if she had died after him.

There is nothing in *Bristol* v. *Atwater*, 50 Conn. 402, which militates against the views which have been expressed. There a devise, subject to a life estate in *S*, to her children, if she leave any surviving her, but if she leave none, to the testator's other children or their issue, *per stirpes*, was held not to vest any transmissible estate in a child of *S* during her life; but we relied largely on the fact that whether this child or his child or grandchild was to take on the contingency named was wholly uncertain, and observed that had the remainderman been definitely ascertained a different question would have been raised. *Beckley* v. *Leffingwell*, 57 Conn. 163, 165, 17 Atl. 766.

In *Ingersoll* v. *Ingersoll*, 77 Conn. 408, 59 Atl. 413, we held that a bequest in remainder, after a life estate, to *C*, if living at the death of the life tenant, created a condition precedent. The will in the case at bar differs in that the bequest in remainder is absolute, though qualified by a subsequent provision, which, as we interpret it, is so expressed as to constitute a condition subsequent. Gray on Perpetuities (2d Ed.) § 108,

But two descendants of the testator survived Mrs. Mason, namely, Mary E. Perkins, a child of his daughter Mrs. Perkins, and Harriet V. Whitaker, a great-grandchild of his daughter Mrs. Whitaker. The latter is not a beneficiary under the will. Subject to the life estates, the residuary fund was given to the children of the testator's daughters. At its date they all had children living, and there is nothing to indicate that he used the term with the intention of including his remoter descendants. It must therefore be given its primary legal meaning. *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885.

The remainders in favor of children were "to be to said children respectively, and to their heirs, administrators and assigns forever." It was not, therefore, one of those class gifts under which, on the death of a member of the class before he came into the enjoyment of the estate, his interest would pass to the survivors. Each member of the class took a several interest which, on his death, became part of his estate.

It follows that one moiety of the fifth of the estate of which Mrs. Mason had the life use, on September 30th, 1908, when she died leaving no surviving children, became absolutely vested, one third in Mary E. Perkins, the sole surviving child of Elizabeth M. Perkins; one third in the estate of her brother Francis W. Perkins, deceased; and one third in the estate of her brother Edmund Perkins, deceased; and that the other moiety became thus vested in the personal representatives of the three deceased children of Mrs. Whitaker who were living at the decease of Smith Wilkinson, one third in the estate of Elizabeth H. Mason; one third in the estate of Horace W. Whitaker; and one third in the estate of Mary A. Mason.

In some of the briefs on which this cause was submitted, a question is raised as to those entitled to the ultimate benefit of what is thus to come to certain of these estates. Our advice has not been specifically asked as to any such

point, nor, had it been, would it have been given in a proceeding of this character.

Those entitled to the fund are entitled to it as it is. The increase in its value added to the capital, not the income. *Boardman* v. *Mansfield,* 79 Conn. 634, 66 Atl. 169.

The Superior Court is advised to enter a judgment in conformity with this opinion.

No costs will be taxed in this court.

In this opinion the other judges concurred.