THE SOUTH NORWALK TRUST COMPANY, EXECUTOR (ESTATE OF ELIAS K. WHITE) *v.* WILLIAM J. WHITE ET AL.

BALDWIN, KING, MURPHY, MELLITZ and SHEA, JS.

Argued April 9—decided May 8, 1959

*Gregory C. Willis,* with whom was *Howard W. Benedict,* for the appellant (defendant Robert F. Gammon, administrator).

*Leslie N. Davis,* for the appellees (defendant Carl J. White et al.), with whom were *Robert M. Dowling,* for the appellees (named defendant et al.), *Joseph M. Kaufman,* for the appellees (defendants Kelley et al.), and, on the brief, *J. Richard Fay,* for the appellee (defendant Harry C. White).

*Harold E. Drew,* for the appellees (defendant Ida M. Williams, administratrix, et al.).

*William R. Curtis* appeared for the plaintiff.

BALDWIN, J. The testator, Elias K. White, died a resident of Norwalk on May 16, 1924. His will, executed on April 2 in that year, was admitted to

probate and the plaintiff was qualified as executor and trustee.

The will created a trust of the residue. It directed the trustee to pay to the testator's widow, Ella L. White, and to his son, Effinger C. White, $1200 a year each from the income of the trust fund, in equal quarterly instalments during their respective lives. The trustee was to retain the balance of the income and add it to the principal until the principal reached $100,000. The trustee had the power in its judgment to invade the principal for payments to the widow or the son for necessities which illness or other good cause required. After the principal reached $100,000, one-half of the income was to be paid to the widow and the other half to the son, during their respective lives, in equal quarterly instalments. If the widow predeceased the son, he was to have the income provided for her. If the son predeceased the widow, the income provided for him was to be added to the principal of the trust. The particular provision which gives rise to this action is the one which disposes of the principal of the trust after the death of both the widow and the son. It reads as follows: "Upon the deaths of my said wife and my said son, I direct that said trust shall cease; and I hereby give and bequeath all that shall then remain of said trust fund, both principal and income to the lawful issue of my said son, Effinger C. White, to be equally divided among them, share and share alike, excluding, however, from the operation hereof, his present living issue; my determination being that no issue of my said son up to the time of the execution of this will shall partake in my estate. In the event that my said son shall die without leaving lawful issue competent to inherit my estate under the provisions hereof, then and in that event, I direct that my estate

shall be lawfully divided among my legal heirs, exclusive of the lawful issue up to this time of my said son, 'per stirpes' and not 'per capita.' "

When the testator made his will and when he died, his wife, Ella, was living. At those times, his only child was Effinger C. White, born in 1888 of a prior marriage of the testator to Eliza W. White, deceased. Effinger died in 1926. He had a son, known as William J. White, born in 1916, who is the father of two children, Judith A. and Suzanne M. White, both of whom were born long after the testator's death. These three are the testator's only living direct descendants and are defendants in this action. Surviving the testator were three brothers, three sisters and two nephews, the children of a sister who had predeceased the testator. Their legal representatives and their heirs or the legal representatives of them are defendants in this action. Ella L. White, during her widowhood, married Charles B. Downie and died intestate in 1954. With her death the trust came to an end. Her administrator, Robert F. Gammon, is a defendant and the appellant in this action. The parties, apart from Gammon, have entered into a stipulation concerning the judgment to be rendered.

The will gave the principal of the trust fund, after the expiration of the life uses, to the lawful issue of the testator's son, Effinger, but deliberately excluded Effinger's "present living issue," that is, William J. White. It then provided that if Effinger died without other issue, the estate should be divided among the testator's other legal heirs, per stirpes and not per capita. On the theory on which the case was tried and is now presented to us on appeal, our consideration of it is limited to the single question whether the widow was an heir within the meaning

of this provision of the will. The administrator of the testator's widow claims that the will is plain and unambiguous and passes the residue to the heirs of the testator under the applicable statutes relating to the distribution of intestate estates (Rev. 1918, § 5061; Public Acts 1921, c. 221) and that, the widow having survived the son, and the son's "present living issue" having been excluded, she acquired a vested interest and therefore is the testator's sole heir.

When a testator gives a life use with the remainder over to his heirs or next of kin or other class, it is presumed that he intended to exclude from such class the one to whom the life use was given unless a contrary intent is manifest in the language of the will. *Kimberly* v. *New Haven Bank N.B.A.*, 144 Conn. 107, 115, 127 A.2d 817, and cases cited. The reason for this rule is that, the testator having given a limited interest in a fund, such as a life estate, it would appear that he did not also intend to give the same beneficiary an additional interest. *Hartford-Connecticut Trust Co.* v. *Gowdy*, 141 Conn. 546, 555, 107 A.2d 409; *Kimberly* v. *New Haven Bank N.B.A.*, supra. We shall consider whether the present will manifests an intent contrary to this presumption.

The term "heirs" in its primary sense means those who would inherit real estate. *Morse* v. *Ward*, 92 Conn. 408, 410, 103 A. 119. At common law this did not include a surviving spouse. *Perry* v. *Bulkley*, 82 Conn. 158, 168, 72 A. 1014; *Ruggles* v. *Randall*, 70 Conn. 44, 49, 38 A. 885; 3 Page, Wills (Lifetime Ed.) § 1010. The term has sometimes been construed to include those who would take under the statutes of distribution. *Daniels* v. *Daniels*, 115 Conn. 239, 240, 161 A. 94. Since to find and effectuate the intent

of the testator is always the controlling purpose of will construction, much depends upon the circumstances under which the testator uses the term. *Ruggles* v. *Randall,* supra, 48; *Miller* v. *Metcalf,* 77 Conn. 176, 180, 58 A. 743; *Gross* v. *Hartford-Connecticut Trust Co.,* 100 Conn. 332, 336, 123 A. 907.

When the testator made his will in 1924, his son Effinger was thirty-six years old. He had been divorced from his wife in 1923 and she had been given the custody of their child, William J. White. There was a fair prospect that Effinger might marry again and have issue. Fate, however, intervened, and he was drowned in 1926 without having remarried. The testator had always enjoyed cordial and friendly relations with his brothers and sisters and their families and frequently exchanged visits with them. His testamentary plan is patent. He made provision for his widow with an income for her life. His direction that his son should have the income provided for his widow if she predeceased the son but that the income payable to the son should be added to the principal of the trust if the son predeceased the widow indicates an intent that the widow should not benefit in the testator's estate beyond the express disposition of income made for her. The testator provided for the possibility that Effinger might marry again and have issue. Failing that, he directed that the principal of the trust be divided among "my legal heirs . . . 'per stirpes' and not 'per capita.'" This language fits most aptly his brothers and sisters and their children—his blood relatives. He certainly intended that Effinger should not be included among his heirs, because of the possibility that the issue which he specifically excluded might thereby inherit from Effinger. There is no reason to suppose that

he intended to do more for his widow than for his son, as is made obvious by the disposition of the income hereinbefore discussed. It is true that the heirs of a decedent are ordinarily ascertained as of the date of his death. *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 160, 158 A. 224; *Daniels* v. *Daniels,* supra. But since the termination of the trust depended upon the expiration of two lives, it is fair to assume that the testator contemplated that it would occur in the distant future. Having limited his son's interest to an income for life, the testator could hardly have intended that his widow's heirs would take to the exclusion of all other persons. He obviously intended that his heirs would be those in kinship with him. The presumption that the widow was excluded from the class who would take as heirs and that the testator used the term "legal heirs" in its primary sense is supported by the circumstances about him when he made the will and the testamentary plan of the will considered as a whole.

There is no error.

In this opinion the other judges concurred.