## Graham's Estate.

*Life estate—Principal or income—Increase in value of bonds.*

Where a trustee invests moneys of the trust estate in bonds and subsequently sells the bonds at an advance, and invests the proceeds in other securities, the profit on the bonds is part of the principal of the estate and it should be so held by the trustee.

Where a corporation sells a part of its franchises and property and distributes the proceeds of the same as a dividend among its stockholders, such dividend as between a life tenant and remainder-man is capital and not income.

Argued Oct. 26, 1900. Appeal, No. 143, Oct. T., 1900, by Alexander R. Graham et al., from decree of O. C. Allegheny County, March T., 1900, No. 112, dismissing exceptions to adjudication in the estate of John Graham, deceased. Before Mc-Collum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of Over, J., which was as follows :

John Graham died testate is 1869, having made the following disposition of his residuary estate :

"As to all the rest and residue of my estate real, personal and mixed not hereinbefore specially devised or bequeathed I give, devise and bequeath the same to my said executors and trustees to be held by them and their successors for and upon the following purposes, uses and trusts, viz: That they will receive and collect the rents, profits and dividends and income of my said residuary estate, with power and authority to sell the same or any part thereof, if they or a majority of them deem it best so to do, conveying such portion thereof as may be realty in fee simple, and to execute and deliver all and any deeds or other instruments of writing that may be necessary for that purpose, and to re-invest the proceeds of any such sale or sales to be held by them upon the same uses and trusts in such property or securities as they may deem safe and for the advantage of my estate, and I direct that my said executors

and trustees shall not be held responsible for any losses that may arise to my estate out of investments made by them in good faith, and I further direct that my said executors and trustees and their successors shall use and apply the income yielded by my said residuary estate as follows, viz: they shall semi-annually divide said yearly income into three equal parts or shares, one of which shall be paid by them into the hands of each of my said sons, Stafford, Alexander R. and John, to be used for the support, maintenance and education of themselves, their wives and children and for no other purpose, and in case of the death of any of my said sons during the continuance and existence of this trust in regard to said residuary estate, the share payable to him semi-annually for the purposes aforesaid, shall be paid, one-third thereof to his widow and two-thirds thereof to his children, but if he shall have left no widow then the whole shall be paid to his children, and issue of deceased children, if such there be, but if he have left no children or issue of children then it shall be paid to the children of my other sons then living and the issue of such as may be deceased in equal shares in the manner hereinbefore provided, the issue of deceased children in all cases taking together the same share as the deceased child would have taken if alive.

" 9. I further direct that this residuary trust shall cease and terminate when all my said sons and their present wives, Martha, Annie and Cecilia shall have died, and I direct that my then acting trustees shall then, viz: after the death of all my said sons and their said wives, divide and distribute the said residuary trust estate among the children of my said sons then living, and the issue of such of them as may be then deceased, equally in the manner hereinbefore directed, that is to say, the issue of a deceased child taking the same share as the parent would have taken if alive at that time, and to execute all such deeds of conveyance or other instruments of writing as may be necessary for the purpose of making said division and distribution."

William Roseberg, the accountant and surviving trustee, on March 27, 1896, sold part of the residuary real estate for $55,000, taking a bond and mortgage to secure the payment of the purchase money and interest. On July 24, 1897, he accepted in payment of the principal debt of said mortgage fifty-five bonds of

the Fox Pressed Steel Company, dated April 3, 1897, payable May 1, 1917, with lawful interest payable semiannually, free of all taxes, and at the same time he purchased at par with a part of the proceeds of the sale of certain other residuary real estate, twenty bonds of said company, all of them being secured by mortgage. These bonds were a part of an issue of 150 bonds of $1,000 each, with a condition that the company should, commencing with the year 1898, redeem eight of them annually, those redeemed to be determined by lot. On December 24, 1897, he sold or surrendered the said bonds at a premium of $17,750, and reinvested the proceeds of said sale, to wit: $92,750, in other securities which yield interest at the rate of five per cent per annum.

There were 898 shares of stock of the Monongahela Navigation Company, included in the trust estate, appraised at $42.00 per share. By virtue of an act of congress of June 3, 1896, proceedings were instituted in the United States courts for the condemnation of the franchises and property of the company, and on July 2, 1897, the report of the viewers was confirmed and judgment entered thereon for $4,056,973, which amount was paid to the company. The trustee has received $98.00 per share on 898 shares held by him, being $50,288 in excess of the appraised value. No part of this amount represents surplus earnings or income. In his account he claims credit for this excess and the premium received on the Fox Pressed Steel Company bonds as part of the corpus, to which exceptions are filed by the legatees for life, it being claimed that both should be distributed to them as income.

Although a trustee may be ever so prudent, there is more or less risk attending his investments; a trust fund cannot be absolutely protected, and there is no assurance that the original amount invested in the bonds of the Fox Pressed Steel Company will be in the hands of this trustee at the expiration of the trust, for distribution to the legatees in remainder. A trust fund is its own insurer against all risks except the negligence of the trustee, and especially so here, as the trustees are not to be held responsible for any losses that might arise out of investments made by them in good faith, and have great discretion in making investments. The hazard of the risk is borne by both the legatee for life and in remainder, for if there

be a diminution of the corpus by reason of unfortunate investments, the income as well as the corpus is thereby depleted and the loss falls on both, the former receiving less income and the latter less corpus. If then, in case of a loss by reason of an unfortunate investment, it falls on both the legatees for life and in remainder, it seems but equitable that if there be a profit arising from the sale of a trust security, they should both participate in it in the same manner they would bear a loss, the former receiving more income from the increased corpus and the latter more corpus. If the profit in such a case be given as income to the legatee for life, a case might arise which would be disastrous to the legatee in remainder whilst the former would be greatly benefited. To illustrate : Suppose that this estate consisted of $10,000 invested in these bonds; that they were sold for $20,000 and the premium of $10,000 distributed as income. The next investment might prove unfortunate, the whole of the original corpus be lost, and the legatee in remainder receive nothing, whilst the legatee for life would have received absolutely the amount of the original investment. As a loss on a trust investment is deducted from the corpus, on the other hand if there be a profit surely it should be held to be an accretion to the corpus and part of it.

In Hill on Trustees (4th Am. ed.), * 386, it is said :

" That any extraordinary bonus or addition to the usual annual income of stock or other property which is held in trust for one for life with remainder over, must be treated as capital and added to the principal fund."

" A rise in the value of trust investments, like a rise in the value of lands held in trust, has always been regarded as an accretion of the principal, and therefore belonging to the remainder-man :" Hubley's Estate, 16 Phila. 327.

This case was affirmed by the Supreme Court at No. 355, January term, 1884, and is on all fours with the one at bar. There land had been sold to the city of Philadelphia, the proceeds had been invested in municipal bonds of the city, and they had been sold at a premium. It was held that it belonged to the remainder-man and not to the life tenant, Judge ASHMAN saying :

" One proof that the premium is an adjunct of the capital is that it will be required in addition to the par value of the loans

for the purchase of other securities yielding as high and as cer-
tain a rate of interest.    Another is, that the fund takes the place
of the original real estate as to which, if the life tenants take
more than the annual product, they would commit waste, and
from whose enhancement in value they would derive no profit
beyond a possible increase in rental."

Hubley's Estate was also referred to, distinguished and ap-
proved in Thomson's Estate, 153 Pa. 332, where it was said:
" It was the case of an increase in the value of a trust invest-
ment, not of the income from it."

In Van Vleck v. Lounsbery, 34 Hun, 569, where executors
purchased mortgaged premises on the foreclosure of their mort-
gage, and afterwards sold the property at a profit of $1,300,
it was held that the profit belonged to the principal of the es-
tate.

Where the value of real or personal estate held as an invest-
ment increases from natural causes, such increase is principal
and goes to the remainder-man : Lawrence's Est., 26 N. Y. St.
Rep. 238; Townsend v. United States Trust Co., 3 Redfield
(N. Y.), 220 ; In re Vedder, 40 N. Y. St. Rep. 119.

The general rule upon the subject of increase in value of
corpus held by trustees is well stated by the surrogate in In re
New York Life Insurance and Trust Co., 53 N. Y. Supp. 382:

" The loss or gain in the value of securities purchased by the
trustee in the exercise of his sound discretion should go to the
diminution or accretion, as the case may be, of the capital and
not to the income, unless a contrary intention must be inferred
from the trust instrument."

In Accounting of Gerry, 103 N. Y. 445, it was held by the
court that where an investment was made by trustees in securi-
ties other than those named in the will, and surplus over the
original amount of the investment was realized by the sale of
the securities after the death of the life tenant, the accretion
was a part of the principal and not income, and the same rule
was applied in McLouth v. Hunt, 154 N. Y. 179.

In Gray v. Darlington, 15 Wallace, 63, it was held that where
bonds of the United States were sold by the owner after being
held by him four years, at an advance of $20,000 over their
cost to him, that this amount was not taxable as gains, profits
or income of the owner for the year in which the sale was

made, under the revenue law.    Mr. Justice FIELD, delivering
the opinion of the court, said:

" The mere fact that property has advanced in value between
the date of its acquisition and the sale, does not authorize the
imposition of the tax on the amount of the advance.    Mere ad-
vance in value in no sense constitutes the gains, profits or in-
come specified in the statute.    It constitutes and can be treated
merely as increase of capital."

In Schofield v. Redfern, 32 L. J. Ch. 627, Vice Chancellor
KINDERSLEY held that where stocks were sold shortly before
the dividend day, by reason of which a premium was obtained for
them, no apportionment of that premium will be made between
the life tenant and the remainder-man, but the whole of it be-
longs to the remainder-man.

The profit from the sale of these bonds was realized by reason
of the enhancement in value of the trust investments, is not
income from them, and, we think, both upon reason and author-
ity, that it is part of the corpus, and should be so held by the
trustee.

Had the real estate from which the fund invested in these
bonds originated been sold by the testator in his lifetime, and
the income of the proceeds given to the legatees for life with-
out the intervention of a trustee, they would have been entitled
to receive the corpus upon giving bond with surety conditioned
for its payment to the legatees in remainder at the termination
of the life estate, and if they had invested it in these bonds and
sold them, the premium would belong to them.    But in that
event they would be insurers of the corpus, and they or their
sureties bound to pay it to the legatees in remainder even if it
were all lost in unfortunate investments.

It must be conceded it is difficult to distinguish this case in
principle from Park's Estate, 173 Pa. 190.    There as here the
testator gave the rent of his real estate and the income and
profits of personal estate to trustees with directions to pay the
net income to a life tenant, and the remainder to her children
at her death.  ' The trustees invested trust funds in two mort-
gages, which they foreclosed, purchased the property, held it
for some years, and then resold it, realizing, after payment to
the life tenant of six per cent per annum on the amount of the
original investment, and all costs and expenses, a net profit of

$26,000. This court held, HAWKINS, P. J., dissenting, that this profit was part of the corpus, but the Supreme Court adopted the dissenting opinion, reversed the decree and awarded the $26,000 to the tenant for life. It appears, however, from the opinion that there was a misapprehension as to the provisions of the will in that case, as it is quoted as giving both the income and profits to the tenant for life, and as the income alone is given here, it may be for this reason the case is not in point.

The amount paid by the United States government in the condemnation proceedings to the Monongahela Navigation Company was the value, as found by the viewers, of its franchises, locks and dams. No surplus earnings were included, and Earp's Appeal, 28 Pa. 368, and kindred cases are not in point. The question, however, is ruled by Eisner's Estate, 175 Pa. 143, where it was held that:

" Where a corporation sells a part of its franchises and property and distributes the proceeds of the same as a dividend among its stockholders, such dividend, as between a life tenant and remainder-man, is capital and not income.".

And that:

" Property of a corporation, after payment of its liabilities, belongs to the existing stockholders, who, therefore, are entitled to any and all enhancements of its original value, and such enhancements belong not to the tenant for life, but to the remainder-man."

The excess received by the trustee for the stock of the Monongahela Navigation Company above its appraised value is, therefore, part of the corpus and must be so held by him, and the exceptions to the account must be dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*Francis S. Bennett*, for appellants.—Analogous Pennsylvania cases show (1) a favorable construction given bequests of income, and (2) life donees entitled as well to extra as ordinary profits earned pending their estates: Eley's App., 103 Pa. 300; Woodburn's Est., 138 Pa. 606; Smith's Est., 140 Pa. 344; Park's Est., 173 Pa. 190.

*C. C. Dickey*, with him *George Shiras, 3d*, and *W. K. Shiras*, for appellees, were not heard, but cited in their printed brief: Hubley's Est., 16 Phila. 327; Van Blarcom v. Dager, 31 N. J. Eq. 783; Gibbons v. Mahon, 136 U. S. 549; Van Doren v. Olden, 19 N. J. Eq. 176; Ashurst v. Field, 26 N. J. Eq. 1; Bergen v. Valentine, 63 How. Prac. Rep. 221; In re New York Life Ins. & Trust Co., 53 N. Y. Supp. 382; Gray v. Darlington, 15 Wallace, 63; Shaw v. Cordis, 143 Mass. 443.

PER CURIAM, January 7, 1901:

We affirm the decree in this case on the able and satisfactory opinion of the learned judge of the orphans' court.

Decree affirmed, costs of audit to be paid out of the estate.

---

# Smythe *v.* O'Brien & Ashley.

*Contract—Attorney at law—Fraud—Account—Equity.*

On a bill in equity against two attorneys to account for the sum of $8,000, it appeared that the plaintiff had authorized the defendants in writing to exchange certain real estate owned by him for stock in a corporation which he was very desirous of acquiring, and in addition to the real estate to offer the sum of $8,000 for the stock. He agreed in writing to allow defendants as compensation for their services any sum that they might be able to save out of the cash payments of $8,000. The attorneys effected the exchange without any cash payment and retained the $8,000 without revealing to the plaintiff the terms of the exchange. There was no evidence that the agreement had been procured from plaintiff by any fraud or concealment. *Held*, that the bill was properly dismissed.

Argued Oct. 26, 1900. Appeal, No. 138, Oct. T., 1900, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1900, No. 91½, dismissing bill in equity in case of H. E. Smythe v. Charles A. O'Brien and Charles W. Ashley, trading as O'Brien & Ashley. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an account.

FRAZER, J., filed the following opinion:

The bill in this case was filed for the purpose of compelling