## BREWSTER v. WALSH, Internal Revenue Collector.

(District Court, D. Connecticut. December 16, 1920.)

No. 2133.

1. **Internal revenue ☞7—Interest on purchase price of bonds not included in cost in computing profit.**

   In computing plaintiff's profit on a sale of bonds claimed to be taxable as income, where plaintiff paid for the bonds when they were allotted to him as member of an underwriting syndicate, but did not receive them for three years, interest on the price to the date of receipt of the bonds cannot be included as a part of the cost.

2. **Internal revenue ☞7—Stock dividend not taxable as "income."**

   A stock dividend declared by a corporation is not taxable as "income" under the Sixteenth Amendment to the Constitution.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

3. **Internal revenue ☞7—Sixteenth Amendment does not extend subjects of taxation, but merely dispenses with apportionment.**

   The Sixteenth Amendment does not extend the taxing power to new subjects, but merely removes all occasion otherwise existing for an apportionment among the states of taxes laid on income, from whatever source derived.

4. **Constitutional law ☞16—Congress and state Legislatures presumed to have knowledge of construction of language used in amendment.**

   Congress and the several state Legislatures, in adopting the Sixteenth Amendment, are presumed to have had knowledge of the meaning attributed by decisions of the state and federal courts to the words "incomes from whatever source derived."

5. **Internal revenue ☞7—Increase in capital investment not income.**

   Enrichment through increase in the value of capital investment is not income, within the Sixteenth Amendment.

6. **Internal revenue ☞7—Tax is on capital, and not on income, when payment requires conversion of capital.**

   If it requires conversion of capital in order to pay a tax, the tax is on capital increase, and not on income, within the meaning of the Sixteenth Amendment.

7. **Internal revenue ☞2, 7—Increase in value of bonds sold at profit not taxable as income, and statute attempting to tax it is unconstitutional.**

   The appreciation in the value of corporate bonds owned by a person not engaged in trading in such securities, though realized by a sale of the bonds at a profit, is not income, within Amendment 16, but merely a capital increase, and so much of Income Tax Law 1916, § 2, subds. (a) and (c), as attempts to tax the profit from such a transaction, violates Const. art. 1, § 9, cl. 4, prohibiting direct taxes, unless in proportion to population.

8. **Internal revenue ☞7—Sixteenth Amendment cannot be extended to property not income, though described as such by Congress.**

   The word "incomes," as used in the Sixteenth Amendment, cannot be construed to include property other than income, even if such property is described as income by an act of Congress.

At Law. Action by Frederick F. Brewster against James J. Walsh, as Collector of Internal Revenue. Judgment for plaintiff.

Henry F. Parmelee and George D. Watrous, both of New Haven, Conn., for plaintiff.

Edward L. Smith, U. S. Atty., and Allan K. Smith, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge. This action arises under the Income Tax Law of 1916 (39 Stat. 756). The plaintiff seeks to recover of the defendant, who is collector of internal revenue for the district of Connecticut, $17,689.13, which amount the plaintiff paid to the government under protest, as an additional income tax assessed against him for the year ending December 31, 1916. The plaintiff further claims that there is also due him the additional sum of $67.66, which the government concedes was an overpayment of normal tax and is rightly due the plaintiff, so that the total amount claimed by the plaintiff is $17,756.79. Trial by jury was waived, and the case was tried to the court.

The facts are stipulated. It appears that the plaintiff is not now, nor was he during the times mentioned herein, a member of any Stock Exchange, or of any similar organization or association engaged in the business of trading in, buying, or selling securities. Neither was he in any way engaged in the business of buying or selling stocks and bonds, otherwise than occasionally making purchases of stocks and bonds for investment purposes, and occasionally making sales of such stocks and bonds for the purpose of changing the character of his investments. It further appears that there are three transactions involved in the main points raised in this suit.

The first transaction concerns the bonds of the International Navigation Company. In 1899 the plaintiff acquired certain interest-bearing bonds of that company, of the face value of $191,000, in exchange for other securities of the same corporation, and during the year 1916 he sold the same bonds for $191,000. On March 1, 1913, these bonds were quoted in the market at 79½ per cent. of their face value, so that on that day the market value of the bonds was $151,845. The tax sought to be collected by the government on this transaction is based upon the difference between the sale price and the market value of the bonds on March 1, 1913, to wit, $39,155, which amount the Commissioner taxed as income for the year 1916, and is part of the tax paid under protest, which plaintiff seeks to recover in this suit.

The second transaction concerns certain bonds of the International Mercantile Marine Company. In 1903 plaintiff, as a member of an underwriting syndicate, was granted an allotment of mortgage bonds of the face value of $257,000, in return for which he paid the company at that time $231,300 in cash; but the bonds thus allotted were not delivered to the plaintiff until April, 1906, when he received them, with nothing by way of interest on the amount of cash he had turned over to the company in 1903. The plaintiff claims that interest at 6 per cent. for three years on $231,300 is properly an element of cost and attributable thereto.

[1] It becomes necessary at this point to digress from a statement of the facts and first dispose of plaintiff's claim for interest on this transaction, in order to determine what the bonds actually cost the plaintiff, as the actual cost must be determined before consideration can be given to the plaintiff's claims respecting the tax the Commissioner assessed, and which plaintiff paid under protest, pursuant to such assessment. Plaintiff's claim that interest computed from date of payment in 1903 to date of receipt of bonds in 1906, and added to the cash paid for the bonds, represents the real cost of the bonds to the plaintiff, is untenable.

In Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 38 Sup. Ct. 470, 62 L. Ed. 1061, one of the questions there presented was whether the respondent should be allowed to add interest to the amount of cash it had paid in 1902 for certain shares of the capital stock of another mining company, which shares it sold in 1911, but the Supreme Court held that there was "no merit in the contention that interest should be added to the purchase price in order to ascertain its cost"; so that I find that the actual cost of these bonds to the plaintiff was $231,300.

From the stipulation it further appears that the plaintiff sold the bonds in 1916 for $276,150, part of them having been sold at 107⅜ and part at 107½. But on March 1, 1913, the market quotation and market value of these bonds was 64 bid and 64½ asked, and at such quotation had an actual market value of $164,480. On this transaction the plaintiff failed to make an income tax return as to any profit or gain by him obtained on the sale of these bonds, and was later assessed an additional tax on $111,670, on the ground that this was the representative gain shown by the difference between $164,480, the value of said bonds as indicated by the market quotation of March 1, 1913, and $276,150, the price which plaintiff received from the sale of the bonds in 1916. The tax which was assessed on this transaction by the Commissioner, and paid under protest, and which is part of the tax here sought to be recovered, was levied upon the sum of $111,670, which amount the government claims represents the income received from the sale of these bonds, and which amount, as stated above, was the difference between the market value of the bonds on March 1, 1913, and the sum received for them when sold in 1916.

[2] The third transaction relates to a stock dividend declared by the Standard Oil Company of California, in which company the plaintiff owned 1,330 shares of its capital stock. In 1916 the plaintiff received 665 shares of stock of said company as a stock dividend declared against a surplus, 18.0754 per cent. of which had been earned after March 1, 1913. The government claims that the plaintiff derived $12,019.41 taxable income therefrom; but this claim has been decided adversely to the government in Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, where the identical stock dividend was under consideration, so that the plaintiff, upon that authority, is entitled to recover for the tax assessed and collected in connection with this transaction.

268 F.—14

The discussion is therefore narrowed to two transactions—those pertaining to (a) the International Navigation Company bonds; (b) the International Mercantile Marine Company bonds, both of which the plaintiff owned on and before March 1, 1913, and which he sold in 1916, in accordance with the conditions above set forth. So that the sole inquiry here is whether the difference in the amounts between the value of investment securities on March 1, 1913, and the amounts received for such securities when sold in 1916 is taxable income, within the Income Tax Law of 1916 (39 Stat. c. 463, pp. 756, 757).

The discussion of this proposition revolves around the Sixteenth Amendment of the Constitution and the legislation passed by the Congress after the ratification of the amendment. The Sixteenth Amendment to the Constitution provides:

"The Congress shall have power to lay and collect taxes *on incomes*, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

The pertinent sections of the statute passed by the Congress to carry the amendment into effect provide:

"Sec. 1. (a) That there shall be levied, assessed, collected, and paid annually upon the entire net income received in the preceding calendar year from all sources by every individual, a citizen or resident of the United States, a tax of two per centum upon such income."

"Sec. 2. (a) That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever: Provided, that the term 'dividends' as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint-stock company, association, or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders, whether in cash or in stock of the corporation, joint-stock company, association, or insurance company, which stock dividend shall be considered income, to the amount of its cash value."

It is thus apparent that the statute specifically imposes a tax upon net income, which "shall include gains, profits, and income derived from * * * sales or dealings in property," and then provides:

"(c) For the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived."

It is the contention of the plaintiff that the statute is unconstitutional, in so far as it taxes as income the increased value of investments when realized by sale, and that such a tax is a direct tax upon capital or property, not authorized by the Sixteenth Amendment, and not a tax upon income; in other words, that such gains do not come within the definition of income, as the word is used in the Sixteenth Amendment.

On the other hand, it is the contention of the government that such gains do constitute income properly taxable under the Income Tax Law of 1916.

We are therefore brought to a consideration of the scope of the Sixteenth Amendment, because there is no question but that prior to the adoption of this amendment the Congress had no power whatever to tax as income gains arising from the sale of property, where the owner thereof was not a dealer or trader in such property, so as to justify an excise tax upon his business. In support of this, reference is made to the decision of the Supreme Court in Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108. The conclusion stated by Chief Justice Fuller (158 U. S. on page 637, 15 Sup. Ct. 920, 39 L. Ed. 1108) is as follows:

"Taxes on personal property, or on the income of personal property, are likewise direct taxes," and that "the tax imposed by sections twenty-seven to thirty-seven, inclusive, of the act of 1894, so far as it falls on the income of real estate and of personal property, being a direct tax within the meaning of the Constitution, and, therefore, unconstitutional and void because not apportioned according to representation, all those sections * * * are necessarily invalid."

In Eisner v. Macomber, supra, Mr. Justice Pitney, speaking of the Pollock Case, said (252 U. S. on page 205, 40 Sup. Ct. 192, 64 L. Ed. 521):

"It was held that taxes upon rents and profits of real estate and upon returns from investments of personal property were in effect direct taxes upon the property from which such income arose, imposed by reason of ownership, and that Congress could not impose such taxes without apportioning them among the states according to population, as required by article 1, § 2, cl. 3, and section 9, cl. 4, of the original Constitution."

[3] The Sixteenth Amendment does not extend the taxing power to new subjects. In Evans v. Gore, 253 U. S. 245, at page 261, 40 Sup. Ct. 550, at page 556 (64 L. Ed. 887), Mr. Justice Van Devanter, in delivering the opinion of the Supreme Court, said:

"Thus the genesis and words of the amendment unite in showing that it does not extend the taxing power to new or excepted subjects, but merely removes all occasion otherwise existing for an apportionment among the states of taxes laid on income, whether derived from one source or another."

And again in Eisner v. Macomber, supra, 252 U. S. 206, 40 Sup. Ct. 193, 64 L. Ed. 521, Mr. Justice Pitney, in discussing the scope of the amendment, said:

"As repeatedly held, this did not extend the taxing power to new subjects, but merely removed the necessity which otherwise might exist for an apportionment among the states of taxes laid on income. Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 17–19, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414; Stanton v. Baltic Mining Co., 240 U. S. 103, 112, et seq., 36 Sup. Ct. 278, 60 L. Ed. 546; Peck & Co. v. Lowe, 247 U. S. 165, 172, 173, 38 Sup. Ct. 432, 62 L. Ed. 1049. A proper regard for its genesis, as well as its very clear language, requires also that this amendment shall not be extended by loose construction, so as to repeal or modify, except as applied to income, those provisions of the Constitution that require an apportionment according to population for direct taxes upon prop-

erty, real and personal. This limitation still has an appropriate and important function, and is not to be overridden by Congress or disregarded by the courts. In order, therefore, that the clauses cited from article 1 of the Constitution may have proper force and effect, save only as modified by the amendment, and that the latter also may have proper effect, it becomes essential to distinguish between what is and what is not 'income,' as the term is there used, and to apply the distinction, as cases arise, according to truth and substance, without regard to form. Congress cannot by any definition it may adopt conclude the matter, since it cannot by legislation alter the Constitution, from which alone it derives its power to legislate, and within whose limitations alone that power can be lawfully exercised."

In the case at bar it therefore "becomes essential to distinguish between what is and what is not 'income' as the term is used in the Sixteenth Amendment, * * * and to apply the distinction according to truth and substance without regard to form," in order that article 1 of the original Constitution, section 2, clause 3, and section 9, clause 4, may have proper force and effect, save only as modified by the Sixteenth Amendment.

The question, therefore, is simply this: Is a gain in value realized from the sale of property income? Insisting with great earnestness, with persuasive argument, and the citation of cases alleged to be in support of its argument, the government contends that the answer is: "Yes." The plaintiff, with equal forcefulness, contends that the answer is: "No."

But the cases relied upon by the government arose under the Corporation Tax Act of 1909 (36 Stat. 112), and not under an income tax law. The Corporation Tax Act of 1909, as held by the Supreme Court in Stratton's Independence v. Howbert, 231 U. S. 399, 414, 416, 34 Sup. Ct. 136, 58 L. Ed. 285, was not an income tax law, and since gains by sales were specifically included as taxable, the cases decided under that act do not determine the definition of the word "income," within the Sixteenth Amendment, and so are not apposite to the instant case.

Mr. Justice Pitney, in the Stratton's Independence Case, supra, 231 U. S. on page 414, 34 Sup. Ct. on page 139 (58 L. Ed. 285), said:

"As has been repeatedly remarked, the Corporation Tax Act of 1909 was not intended to be and is not in any proper sense an income tax law. This court had decided in the Pollock Case that the Income Tax Law of 1894 amounted in effect to a direct tax upon property, and was invalid because not apportioned according to population as prescribed by the Constitution. The act of 1909 avoided this difficulty by imposing, not an income tax, but an excise tax upon the conduct of business in a corporate capacity, measuring, however, the amount of tax by the income of the corporation, with certain qualifications prescribed by the act itself. Flint v. Stone-Tracy Co., 220 U. S. 107; McCoach v. Minehill Co., 228 U. S. 295; United States v. Whitridge (decided at this term) ante, p. 144."

And again on page 416 of 231 U. S., on page 142 of 34 Sup. Ct. (58 L. Ed. 285), he said:

"As to what should be deemed 'income' within the meaning of section 38, it of course need not be such an income as would have been taxable as such, for at that time (the Sixteenth Amendment not having been as yet ratified), income was not taxable as such by Congress without apportionment accord-

ing to population, and this tax was not so apportioned. Evidently Congress adopted the income as the measure of the tax to be imposed with respect to the doing of business in corporate form because it desired that the excise should be imposed, approximately at least, with regard to the amount of benefit presumably derived by such corporations from the current operations of the government. In Flint v. Stone-Tracy Co., 220 U. S. 107, 165, it was held that Congress, in exercising the right to tax a legitimate subject of taxation, as a franchise or privilege, was not debarred by the Constitution from measuring the taxation by the total income, although derived in part from property which, considered by itself, was not taxable. It was reasonable that Congress should fix upon gross income, without distinction as to source, as a convenient and sufficiently accurate index of the importance of the business transacted."

See, also, Anderson v. Forty-Two Broadway, 239 U. S. 69, 72, 36 Sup. Ct. 17, 60 L. Ed. 152; Stanton v. Baltic Mining Co., 240 U. S. 103, 114, 36 Sup. Ct. 278, 60 L. Ed. 546; Von Baumbach v. Sargent Land Co., 242 U. S. 503, 522, 37 Sup. Ct. 201, 61 L. Ed. 460; Doyle v. Mitchell Bros. Co., 247 U. S. 179, 183, 38 Sup. Ct. 467, 62 L. Ed. 1054.

The question before us was passed upon by the Supreme Court under the Income Tax Law of 1867 in Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, and this precise question has not been before the Supreme Court since that decision. There it was decided that under the law of 1867 a gradual increase in value extending over a period of years could not be taxed as income for the year in which it was realized by sale. Speaking for the court, Mr. Justice Field on page 65 of 15 Wall. (21 L. Ed. 45) said:

"The question presented is whether the advance in the value of the bonds, during this period of four years, over their cost, realized by their sale, was subject to taxation as gains, profits, or income of the plaintiff for the year in which the bonds were sold. The answer which should be given to this question does not, in our judgment, admit of any doubt. The advance in the value of property during a series of years can in no just sense, be considered the gains, profits, or income of any one particular year of the series, although the entire amount of the advance be at one time turned into money by a sale of the property. The statute looks, with some exceptions, for subjects of taxation only to annual gains, profits, and income."

And further on page 66 of 15 Wall. (21 L. Ed. 45):

"The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of the tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as increase of capital."

Respecting this decision, the Supreme Court in Lynch v. Turrish, 247 U. S. 221, speaking by Mr. Justice McKenna, said on page 230, 38 Sup. Ct. 537, on page 539 (62 L. Ed. 1087), after discussing Gray v. Darlington: "This case has not been since questioned or modified"—and meets the government's attempt to distinguish Gray v. Darlington, on page 230 of 247 U. S., on page 539 of 38 Sup. Ct. (62 L. Ed. 1087), in the following manner:

"The government, however, makes its view depend upon disputable differences between certain words of the two acts. It urges that the act of 1913

makes the income taxed one 'arising or accruing' in the preceding calendar year, while the act of 1867 makes the income one 'derived.' Granting that there is a shade of difference between the words, it cannot be granted that Congress made that shade a criterion of intention and committed the construction of its legislation to the disputes of purists. Besides, the contention of the government does not reach the principle of Gray v. Darlington, which is that the gradual advance in the value of property during a series of years in no just sense can be ascribed to a particular year, not therefore as 'arising or accruing,' to meet the challenge of the words, in the last one of the years, as the government contends, and taxable as income for that year or when turned into cash. Indeed, the case decides that such advance in value is not income at all, but merely increase of capital and not subject to a tax as income."

[4] The meaning of the word "incomes" in the Sixteenth Amendment is no broader than its meaning in the act of 1867. It was adopted in its present form, using only the words "incomes from whatever source derived," with the presumptive knowledge on the part of Congress and the several state Legislatures, of the meaning attributed thereto by the decisions of the various courts, both state and federal.

It has been held repeatedly that gains realized from the sale of capital assets held in trust are not income, but are principal—exactly as the securities were before they were sold, and that where a tenant for life is entitled to the entire net income of a fund, and the trustee realizes an advance in value by the sale of an investment, the life tenant is not entitled to the gain which is uniformly treated by the courts as an increment to principal and a part of the corpus of the trust.

The following are a few of the leading cases sustaining the doctrine that the growth or increase of value, when realized on the sale of an investment, is accretion to capital and not income, as between life tenant and remainderman: Boardman v. Mansfield, 79 Conn. 634, 66 Atl. 169, 12 L. R. A. (N. S.) 793, 118 Am. St. Rep. 178; Carpenter v. Perkins, 83 Conn. 11, 20, 74 Atl. 1062; Parker v. Johnson, 37 N. J. Eq. 366, 368; Outcalt v. Appleby, 36 N. J. Eq. 74, 78; Matter of Gerry, 103 N. Y. 445, 9 N. E. 235; Thayer v. Burr, 201 N. Y. 155, 157, 158, 94 N. E. 604; Graham's Estate, 198 Pa. 216, 47 Atl. 1108; Neel's Estate (No. 2) 207 Pa. 446, 56 Atl. 950; Lauman v. Foster, 157 Iowa, 275, 135 N. W. 14, 50 L. R. A. (N. S.) 531; Slocum v. Ames, 19 R. I. 401, 36 Atl. 1127; Jordan v. Jordan, 192 Mass. 337, 78 N. E. 459; Mercer v. Buchanan (C. C.) 132 Fed. 501, 508.

These decisions had at the time of the adoption of the Sixteenth Amendment established a definite meaning of the word "income" for the purpose of statutory and constitutional construction. It is difficult to see how the word "income" can have any different meaning when applied to the proceeds of an investment, when held by a trustee, than when held by an individual, as the Income Tax Law specifically refers to funds held in trust. Section 2 (b).

In order to show the conclusions reached by the courts, it will suffice to quote from only one of the cases to which reference is made supra. In Parker v. Johnson, 37 N. J. Eq. 366, the court said:

"The profit is not income. It was made by the trustee in the process of converting the investment, and, like a premium realized on the sale of gov-

ernment bonds in which the funds might be invested, it belongs to the fund. The trustee in this case is to keep the fund invested, and the tenant for life is entitled to the interest. It is clearly the duty of the trustee to apply the profits on one investment to making up the losses on others."

So it seems that income from investments consists, in the case of bonds, of interest; in the case of stocks, of dividends. There is no income from the sale of investments. The conclusion seems imperative that the word "income" has a well-defined meaning, not only in common speech, but also under judicial construction, and this meaning does not include the increase in value of capital assets when realized upon a sale. The following extract from the opinion of Mr. Justice Pitney in the Macomber Case, supra, 252 U. S. at page 206, 40 Sup. Ct. 193, 64 L. Ed. 521, is instructive:

"For the present purpose we require only a clear definition of the term 'income,' as used in common speech, in order to determine its meaning in the amendment."

It seems to me apparent that the Supreme Court, in Towne v. Eisner, 245 U. S. 418, 426, 38 Sup. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254, and in Eisner v. Macomber, supra, followed the doctrine enunciated in Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525, where it was held that a stock dividend is an accretion to capital, and not income, as between a life tenant and the remainderman, and therefore held in the Towne Case that a stock dividend was not income, within the meaning of the Income Tax Law of 1913, and in the Macomber Case that such a stock dividend was not income, within the meaning of the Sixteenth Amendment. As already stated, it is difficult to see why any different rule should be applied to the proceeds of an investment—purely a capital investment—when held by a trustee than when held by an individual.

[5, 6] Two pertinent points have been definitely established by the Supreme Court in Eisner v. Macomber, supra, 252 U. S. at page 214, 40 Sup. Ct. 196, 64 L. Ed. 521:

First. "Enrichment through increase in value of capital investment is not income in any proper meaning of the term."

And, second. If it requires conversion of capital in order to pay the tax, it must follow that the tax is on capital increase, and not on income, for on page 213 of 252 U. S., on page 195 of 40 Sup. Ct. (64 L. Ed. 521), the court said: "Yet, without selling, the shareholder, unless possessed of other resources, has not the wherewithal to pay an income tax upon the dividend stock. Nothing could more clearly show that to tax a stock dividend is to tax a capital increase, and not income, than this demonstration that in the nature of things it requires conversion of capital in order to pay the tax."

[7] Had the plaintiff possessed no resources other than the bonds which he sold, prior to the sale his capital would have been their then entire value. The increase since March 1, 1913, was capital increase. To collect the tax on this increase in value, because the capital was converted into cash, must of necessity diminish his capital to that extent. Before the sale all the plaintiff possessed was capital, without any part of it constituting income. The sale of capital results only in changing

its form, and, like the mere issue of a stock dividend, makes the recipient no richer than before. Gibbons v. Mahon, supra; Towne v. Eisner, supra; Eisner v. Macomber, supra.

The exact question presented in this case has not been before the Supreme Court since its decision in Gray v. Darlington, supra, nor did it arise in Eisner v. Macomber, supra. Notwithstanding certain passages in the opinion of the court in the Macomber Case, stating that, when dividend stock is sold at a profit, the profit is taxable like other income, which I consider, in view of all that has been written by the Supreme Court in a long line of income tax decisions, must mean that the profit derived from such transactions, if it is income, applies in the case of a trader, and not in the case of an individual, who merely changes his investments.

Therefore, under the authority of Gray v. Darlington, which is approved in Lynch v. Turrish, supra, I feel constrained to hold that the appreciation in value of the plaintiff's bonds, even though realized by sale, is not income taxable as such, and in reaching this conclusion I find support for it in the Macomber Case, where Mr. Justice Pitney says:

"Enrichment through increase in value of capital investment is not income in any proper meaning of the term."

It follows that the Income Tax Law of 1916, in so far as it attempts to tax such increase, is in conflict with the apportionment requirements of the first article of the Constitution, being a direct tax, and not apportioned among the several states according to population.

Counsel for plaintiff contended that the act should be so construed as to limit the tax to the actual increase from the dates of acquisition, although the value of such bonds was less on March 1, 1913, than when acquired prior thereto, in the event that the gain in value of the bonds when sold was taxable at all. In view of the decision that such increases are not income, it becomes unnecessary to discuss the point.

The conclusion herein expressed has been reached only after a very careful consideration of all the respective claims presented by able counsel in exhaustive and persuasive briefs, and with full appreciation of the admonition given by the Supreme Court in Nicol v. Ames, 173 U. S. 509, at page 514, 19 Sup. Ct. 522, 525 (43 L. Ed. 786). This court fully appreciates that "it is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States," and that "the duty imposed demands in its discharge the utmost deliberation and care, and invokes the deepest sense of responsibility," as was said by Chief Justice Fuller in the opening paragraph of the opinion in Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, at page 617, 15 Sup. Ct. 912, 39 L. Ed. 1108.

[8] In the discharge of that duty as I see it, it follows that the word "incomes" in the Sixteenth Amendment should not and cannot be so construed as to include property other than income, even if such property is described as income by an act of Congress, as such a con-

struction permits the Congress to nullify the provisions of the second section of article I of the Constitution, that direct taxes shall be apportioned.

Let judgment be entered for the plaintiff to recover of the defendant $17,756.79, with interest on the same from July 19, 1918, together with costs of suit.

Ordered accordingly.