ARKWRIGHT MUTUAL INSURANCE COMPANY & another *vs.*
COMMISSIONER OF INSURANCE.

Suffolk.    October 4, 1966. — December 2, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Insurance,* Mutual company: profits, investments.    *Words,* "Profits."

"Profits" as used in G. L. c. 175, § 80, does not include unrealized appreciation in the market value of stocks invested in by mutual insurance companies.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on November 12, 1965.

Upon transfer to the Superior Court, the suit was heard by *Moynihan, J.*

*David W. Hays,* Assistant Attorney General, for the defendant.

*John L. Saltonstall, Jr.* (*Richard S. Chute* with him) for the plaintiffs.

SPIEGEL, J. This is a bill for a declaratory decree in regard to the meaning of the word "profits" as it is used in G. L. c. 175, § 80.

A judge of the Superior Court made "Findings, Rulings and Order for Decree" which we herewith summarize. The plaintiffs, Arkwright Mutual Insurance Company (Arkwright) and Boston Manufacturers Mutual Insurance Company (Boston), are mutual fire insurance companies incorporated under the laws of Massachusetts and have their principal place of business in this Commonwealth. In accordance with the provisions of G. L. c. 175, § 25,[1] Arkwright filed a report with the Commissioner of Insurance (Commissioner) in which it stated that, as of December 31, 1963, it had assets in excess of $71,000,000, and liabilities (not including guaranty fund and surplus) of about $28,000,000. Its "surplus as regards policyholders" was more than $43,000,000, consisting of $27,000,000 in accumulated net income and $16,000,000 in unrealized appreciation of investments in common and preferred stocks. Boston also filed such a report in which it stated that, as of December 31, 1963, it had assets in excess of $84,000,000 and liabilities (not including guaranty fund and surplus) of about $34,000,000. Its "surplus as regards policyholders" was about $50,000,000, consisting of $29,000,000 in accumulated net income and $21,000,000 in unrealized appreciation of investments in common and preferred stocks.

Each plaintiff filed an annual statement for the year 1963 stating its surplus, including therein unrealized appreciation of its stock investments. The Commissioner notified

---

[1] "Every company shall annually, on or before March first, file with the commissioner a statement showing its financial condition on December thirty-first of the previous year, and its business of that year."

each plaintiff "that it had failed to comply with the requirements of General Laws c. 175, sections 63 and 80, relating to investments, and . . . issued a public announcement" that the surplus of each plaintiff was not invested in accordance with G. L. c. 175, §§ 63 and 80.

The Commissioner "has taken the position that the entire surplus of each . . . [plaintiff] (including unrealized appreciation in the value of investments)" must be invested in the type of securities (known as legal list securities) specified in G. L. c. 175, § 63. The plaintiffs take the position that "profits" as used in G. L. c. 175, § 80, includes all net income from whatever source, without limitation, accumulated net underwriting revenues, income from investments and realized capital gains, but does not include unrealized appreciation in the market value of their investments in common and preferred stocks.

The judge ruled that "unrealized appreciation in the market value of . . . [the plaintiffs'] investments in stocks does not constitute profits within the meaning of that word in General Laws C. 175, section 80." A final decree was entered to that effect from which the defendant appeals.

General Laws c. 175, § 1, states, "The following words, as used in this chapter, unless the context otherwise requires or a different meaning is specifically prescribed, shall have the following meanings: . . . 'Profits' of a mutual company, that portion of its cash funds not required for payment of losses and expenses nor set apart for any purpose allowed by law."

The parties appear to agree that if the word "profits" is given the meaning assigned to it by G. L. c. 175, § 1, then it does not include unrealized appreciation in the market value of the common and preferred stocks held by Arkwright and Boston.

But the Commissioner argues that the definition of the word "profits," as used in § 80, "should not be determined according to the strict definition contained in . . . § 1." He points to the phrase "unless the context otherwise requires" in § 1 and asserts that the context of the word

"profits" as used in § 80 requires "a more realistic approach." The Commissioner's brief contains a résumé of the legislative history in support of his argument that "profits" as used in § 80 include unrealized appreciation. We do not agree.

General Laws c. 175, § 80, states in material part, "Any such company may accumulate and hold profits, but only until such profits equal four per cent of its insurance in force; and such accumulation shall be subject to the laws relative to the investment of the capital stock of domestic companies, except that it may also be invested in . . . [various banking securities and deposits]. Such accumulation may be used from time to time in the payment of losses, dividends and expenses." This section permits mutual companies to "accumulate and hold profits." The legislative history of this section "shows that if allowing a mutual insurance company to accumulate a general surplus which may at some future time of stress be used to the advantage of policyholders other than those from whose premiums it was accumulated, or in proportions different from those in which it was contributed, constitutes . . . a departure in some degree from the original conception of mutual insurance as simple coöperative self insurance strictly at cost, that departure was intentional and deliberate." *White Fuel Corp.* v. *Liberty Mut. Ins. Co.* 313 Mass. 165, 168.

We are of opinion that the word "profits," in the context of § 80, does not include unrealized appreciation in the market value of securities held by the companies.

To use a colloquial phrase, the "gain" from unrealized appreciation was no more than a "paper profit" which obviously could not have been distributed as a dividend or as a return of premium unless the securities were sold even if the statute did not permit "profits" to accumulate. We conclude that § 80 does not require the "accumulation" of such "gain" to be invested in legal list securities.

Another reason for reaching this conclusion is that the effect of including unrealized appreciation within the definition of "profits" in § 80 would be to require that the gain

on securities held by the companies be realized by selling some of those securities and also to require that such gain be invested in legal list securities. We think that if the Legislature had intended such a result it would have clearly expressed such an intention. Certainly the context of § 80 does not require a definition of the word "profits" which would compel this result.

The plain and ordinary meaning[2] of "profit" does not include unrealized appreciation in the market value of securities owned.[3] In the case of *Sears* v. *Commissioner of Corps. & Taxn.* 322 Mass. 446, 450, we discussed the exclusion of unrealized appreciation from the definition of profits as applied to taxable dividends. We stated that "[w]hen accurately used, the word profit as defined in the dictionaries and by judicial decision carries with it the idea of the acquisition of something new, different, and separate from the original investment out of which it arises. It does not include mere appreciation in market value." We are of opinion that there is nothing in the context of G. L. c. 175, § 80, or in the purposes for which it was enacted, which requires us to conclude that the word "profits" includes unrealized appreciation.

The Commissioner also argues that "profits" really means "surplus" and therefore the plaintiffs should have invested in legal list securities an amount at least as great as the surplus shown on their balance sheets. This argument is apparently based on the erroneous assumption that all surplus shown on a balance sheet represents profits. The confusion appears to be due to the use of the word "surplus" to designate the net assets of these companies.[4]

---

[2] General Laws c. 4, § 6, states: "In construing statutes . . . [w]ords and phrases shall be construed according to the common and approved usage of the language."

[3] Webster's New Intl. Dictionary (2d ed.) defines "profit" in material part as follows: "Excess of income over expenditure, as in a business or any of its departments, during a given period of time; specif.: a The income of invested property, not including an appreciation in market value (15 Wall. 63, 65; 198 Pa. 216)."

[4] American Institute of Accountants, Committee on Terminology, Accounting Terminology Bulletin No. 1, Paragraphs 65–69 (1953).

This confusion might be eliminated if different types of changes in the net assets of the companies were given different headings on the balance sheet.[5]  For example, the designation ''earned surplus'' could be used to reflect changes due to profits or losses; and ''revaluation surplus'' could reflect unrealized appreciation in the assets of the companies.  In the case of stock companies, the excess of the amount received as a contribution to capital over the par value or stated value of the issued stock could be designated as ''paid-in surplus'' or ''capital surplus.''  In this way it would be made abundantly clear that there are several types of surplus which have no relation to profits.  In the instant case the amounts designated by the companies on their balance sheets as surplus are partly ''earned surplus'' and partly ''revaluation surplus.''  It is only the investment of ''earned surplus'' which § 80 purports to regulate.

*Decree affirmed.*

---

[5] See Amory & Hardee, Materials on Accounting (3d ed. 1959) pp. 48, 49.